231 N.J. Super. 163 (1987)
554 A.2d 1372
CINNAMINSON MOTEL OWNERS ASSOCIATION, AN UNINCORPORATED ASSOCIATION OF MOTEL OWNERS, PLAINTIFF,
v.
TOWNSHIP OF CINNAMINSON, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF CINNAMINSON, WILLIAM SHARP AND JOHN DOE, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided December 1, 1987.
*165 John Gillespie for plaintiff (Madden, Ferg, Barron & Gillespie, attorneys).
Barry T. Parker for defendants (Parker, McCay & Criscuolo, attorneys).
HAINES, A.J.S.C.
This suit challenges Cinnaminson Township's ordinance regulating the operation and maintenance of "tourist camps, tourist cabins, trailer camps, tourist homes, rooming houses, inns or hotels where sleeping accommodations are furnished...." Plaintiff Cinnaminson Motel Owners Association ("association") claims that the ordinance is unenforceable by virtue of the provisions of the Hotel and Multiple Dwelling Law (the "law"), N.J.S.A. 55:13A-1 et seq., and the regulations promulgated thereunder. This court, responding to an application to restrain *166 the enforcement of the ordinance, agrees that it cannot be enforced.

A. Construction of the Statute and the Ordinance.

N.J.S.A. 55:13A-25(b), part of the Hotel and Multiple Dwelling Law, provides:
This act is not intended, and nothing in this act shall be construed, to preclude the right of any municipality to adopt and enforce ordinances or regulations more restrictive than this act or any rules or regulations promulgated thereunder. [Emphasis supplied]
Thus, the statute does not preempt the field. "No more explicit an expression that preemption has not occurred could be imagined." Dome Realty, Inc. v. Paterson, 83 N.J. 212, 233 (1980). Municipalities are therefore free to adopt ordinances more restrictively regulating multiple dwellings.[1] The association does not argue to the contrary. Its contention is that the Cinnaminson ordinance is not "more restrictive" than the act and the regulations adopted thereunder.[2]
*167 Cinnaminson's ordinance, adopted several years prior to the passage of the law, is a police power enactment authorized by N.J.S.A. 40:48-2 and -2.12a. Section 2.12a expressly permits the enactment of ordinances "to regulate buildings and structures and their use and occupation...." Nevertheless, the subsequently enacted Motel and Multiple Dwelling Law, covering the same subject, supersedes the ordinance unless the latter is "more restrictive." As the Supreme Court said in Wagner v. Newark, 24 N.J. 467 (1957), "attached to every ordinance adopted by a municipality is the implied condition that it must yield to the predominant power of the State." Id. at 480. McQuillan, Municipal Corporations (3d ed. 1980), § 21.32 amplifies the rule:
It is a general requisite to the validity of an ordinance that it conform to, and not violate, general statutes, and, consistently, a general statute repeals an earlier ordinance to which it is repugnant, unless contrary legislative intention is manifested. [at 240]
The legislation here in question is not intended to repeal the Cinnaminson ordinance if it is "more restrictive" than the act. It is that hard-to-define and hard-to-apply standard with which this court must deal. No doubt standards may be expressed in general terms construed to reflect legislative intent. Our Appellate Division, in Matter of the "Analysis of Walsh Trucking Occupancy and Sprinkler System," 215 N.J. Super. 222 (App. Div. 1987), said:
Our courts have long recognized that a legislative standard may be expressed in general terms. To avoid administrative arbitrariness, such a general legislative standard is construed in light of the regulatory objectives of the underlying legislative enactment. Our courts have also recognized that adequate procedural safeguards may provide greater protection against arbitrary administrative action than highly detailed legislative standards. [at 228-229; citations omitted]
*168 The regulatory objectives of the law are clear. It insures uniform compliance with minimum standards covering the construction and use of all multiple dwellings in every New Jersey municipality. It also protects against arbitrary action through its procedural requirements: advisory consultations, educational services, rules and regulations and administrative hearings. These objectives and requirements must be considered when interpreting and applying the words "more restrictive."
Other rules of statutory construction are also useful here. The law itself, N.J.S.A. 55:13A-2, provides:
This act being deemed and hereby declared remedial legislation necessary for the protection of the health and welfare of the residents of this State in order to assure the provision therefor of decent, standard and safe units of dwelling space, shall be liberally construed to effectuate the purposes and intent thereof.
"[A] liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under a strict construction." Sutherland, Statutes and Statutory Construction (4 ed. 1984), § 58.02. Here, therefore, the law is to be construed to provide the State with control over as many situations as possible so that only clearly "more restrictive" municipal ordinances will be enforceable. Put differently, the words "more restrictive" must be construed strictly against a municipality when deciding whether its ordinance survives the adoption of the law. This is true notwithstanding Art. 4, § 7, par. 11 of the New Jersey Constitution which states: "The provisions ... of any law concerning municipal corporations formed for local government ... shall be liberally construed in their favor." This "constitutional mandate ... constitutes no warrant to read into these statutes a power that is not there and not intended to be given." Wagner v. Newark, supra, 24 N.J. at 478; citations omitted.
Turning to the Cinnaminson ordinance, while keeping these rules in mind, it becomes quickly apparent that the "more restrictive" standard is a slippery one. Consider an ordinance containing provisions 51% of which are clearly more restrictive than those in the statute and regulations. Is the entire ordinance *169 "more restrictive?" If not, are the more restrictive provisions enforceable? Questions raised by a comparison of specific state and local regulations are equally difficult to answer. Cinnaminson's fees are much higher than those charged by the State. They are therefore more restrictive. Should that fact count in the weighing process? The ordinance provides for enforcement only by quasi-criminal action. The act and its regulations provide non-criminal alternatives, and are therefore, less severe. Does this count in the "more restrictive" weighing process?
The Cinnaminson ordinance requires motel premises to be "maintained and conducted in a clean, sanitary and orderly manner." N.J.A.C. 5:10-6.4 and -8.1 to -8.4, which contain regulations implementing the law, provide specific, detailed standards for exterior and interior maintenance. Is careful specificity more restrictive than broad language? Broad language may permit stricter enforcement, depending on the initiative of the enforcer. Broad language, however, is also uncertain and unclear. Specificalities permit precision.
Clear restrictions provide little room for argument by multiple-dwelling owners as to what is required. They provide certain direction for enforcement purposes, thus promoting greater control. The law is intended to effectuate State control. It must be construed liberally for that purpose. The municipal ordinance can survive only if it is clearly "more restrictive." Cinnaminson's maintenance requirements illustrate the conclusion that its ordinance does not pass that test. It is not specific and not certain in nearly all of its provisions when they are compared with those contained in the law and its regulations. The ordinance therefore cannot survive.
Other examples underline this determination.
The ordinance requires "at least four hundred (400) cubic feet of space in each room ... for each person, except children, allowed to occupy the said room as a lodging. In the case of emergency, this provision may be waived." Emphasis supplied. *170 N.J.A.C. 5:10-22.3(6) requires a minimum of 50 square feet of floor space per person and a seven foot ceiling height. Emphasis supplied. It contains an exception for children under age six. Which provision is more restrictive? Ceiling heights strongly affect total cubic feet. Thus, a 20' by 20' room, one foot high, would meet the 400 cubic foot requirement. The ordinance does not specify the age of "children," nor does it define emergencies. The specifics in the State's regulations provide certainty, making them more restrictive than Cinnaminson's ordinance.
The same must be said with respect to nearly all of Cinnaminson's other regulations with the exception of inspection, enforcement and fee provisions. State regulations concerning windows and ventilation, heating, electrical wiring, lighting, doors and locks, fire protection, sanitary facilities, and trash are far more detailed, more clear, more certain and require much more responsibility on the part of multiple-dwelling owners than the ordinance. For example, the ordinance requires owners to maintain a temperature of at least 70 degrees. The State regulation, N.J.A.C. 5:10-14.1, requires the maintenance of "a minimum inside temperature of 68 degrees Fahrenheit in all habitable rooms, measured at least one foot away from any surface at the coldest portion of the space subject to regular use by occupants of any such room when the outside temperature is at design winter conditions." The 68-degree temperature must be maintained between the hours of 6:00 a.m. and 11:00 p.m.; 65 degrees are otherwise permissible. N.J.A.C. 5:10-14.4. The lower temperature required by the State is more restrictive in warm weather. The greater detail provided by the State is more restrictive generally. The ordinance requirement of 70 degrees, for example, could be met by the maintenance of that temperature only in the vicinity of one inside wall of the premises.
There is no need to analyze every provision of the ordinance. Nearly all of them reflect the same difficulty in meeting the more restrictive requirement. The only clearly surviving provisions *171 are those requiring: (1) an annual inspection (State regulations require an inspection only every three years, (2) higher fees, and (3) quasi-criminal enforcement. Higher fees and stronger enforcement procedures are doubtful measures of restrictiveness. They have nothing to do with construction, use or maintenance. An annual inspection requirement, however, is much more restrictive than a three-year requirement. Assuming, arguendo, that the ordinance is more restrictive in all three respects, it still supports no claim to survival, in whole or in part. Neither the Legislature nor Cinnaminson could have intended an entire ordinance to survive on the basis of only three of its provisions. Nor could either have intended to permit the inspection, fee and enforcement provisions of the ordinance to supersede the State regulations covering those subjects when nothing else survives. In Boulevard Apts. v. Borough of Hasbrouck Heights, 111 N.J. Super. 408 (Law Div. 1970), the court, relying on municipal intent, struck down a multiple dwelling ordinance because most of its provisions were not "more restrictive" than the State's. This court agrees with that conclusion. Consequently, Cinnaminson's ordinance may not be enforced.

B. The Refund Claim.

The association seeks a refund of all inspection fees paid by its members since the adoption of the illegal ordinance in 1979. Interest is claimed on the monies due.
The right to recover fees paid by virtue of an invalid ordinance has been firmly established by our Supreme Court. In re Fees of State Board of Dentistry, 84 N.J. 582 (1980), involved the assessment of fees to be paid by dentists and dental hygienists as permitted by N.J.S.A. 45:1-3.2. The statute was designed to raise money with which to defray the expenses of the state board; it provided that "such charges shall not be fixed at a level that will raise amounts in excess of the amount estimated to be so required." The board's assessment *172 would have generated $184,100, whereas actual expenses were estimated at $156,800. The Court ordered a refund of the difference. It said:
In our view, the Association's entitlement to a refund of excess fees followed naturally from the determination that these fees were illegally exacted.
To hold otherwise would allow the Board to enrich itself unjustly at the expense of the members of the Association. It would violate one of the cardinal principles of the common law, requiring restitution to prevent unjust enrichment. [citations omitted]
A long line of decisions in this State establishes the principle that when a tax already collected is set aside by judicial decision, "the law raises an assumption to refund the money which can no longer be honestly retained." The taxing entity has "not a particle of right to the money in question," which is due to the taxpayer "according to the principles of common honesty." [citations omitted.]
In this case, the Board has "not a particle of right" to the registration fees collected in excess of the amounts permitted by N.J.S.A. 45:1-3.2. [84 N.J. at 587]
In Automatic Merchandising Council v. Edison Tp., 102 N.J. 125 (1986), the Court ordered a refund of that portion of a licensing fee which was unreasonable, citing State Board of Dentistry. Id. at 131. The matter was remanded to the municipality with the direction that the "municipality reenact the fee schedule for the regulatory year in question and refund the balance to the claimants". Ibid.
Both of these cases involved excessive fees. In the present case the fees were not merely excessive, they were entirely improper. It therefore appears that the full amount of the improper charges must be refunded. Cinnaminson argues, however, that the members of the association paid the inspection fees without protest until this suit was instituted and are therefore volunteers not entitled to a refund of any monies paid prior to the institution of the suit. That may be the law of New Jersey in the case of true volunteers but the motel owners involved here cannot be so described.
The "volunteer" rule originated in Camden v. Green, 54 N.J.L. 591 (E. & A. 1892), a case involving the payment of an excessive liquor license fee with knowledge that it was excessive *173 and without protest. Camden v. Green was discussed in State Board of Dentistry and distinguished. The Court said:
The present case involved a form of payment under duress. It is well-established that the payment of a tax in order to avoid the loss of a payors' right to practice his profession or to continue in business renders the payment involuntary and removes it from the ambit of the volunteer rule. The dentists here had no choice but to pay the registration fee if they were to continue to practice their profession legally. [84 N.J. at 588-589; citations omitted]
The reasoning applies here. The motel owners would not have been permitted to operate their businesses if they had not paid the inspection fees. Furthermore, they were subject to the provisions of a penal ordinance providing for the imposition of fines and imprisonment for its violation. Prior to the institution of suit, they were threatened with police action pursuant to the ordinance. It cannot be said that they paid the inspection fees "voluntarily."
The members of the association have been subject, not only to the Cinnaminson ordinance, but also to N.J.S.A. 55:13A-13 which required them to pay fees to the State of New Jersey for "certificates of inspection."[3] Those fees were paid in addition to the fees paid to Cinnaminson. The fact of these double exactions, added to all the other circumstances addressed in this litigation, makes the refund of the entire amount paid to Cinnaminson both necessary and equitable.
The interest question remains. In the past, the recovery of prejudgment interest on unliquidated sums was not allowed. See Ellmex Construction Co. v. Republic Insurance Co., 202 N.J. Super. 195 (App.Div. 1985), certif. den. 103 N.J. 453 (1986), which discusses the evolution of of the prejudgment interest theory in New Jersey and the erosion of the rule limiting the allowance of interest to liquidated claims. The court recognized the "gradual statewide development of a permissive judicial attitude toward awarding prejudgment interest in unliquidated *174 damage claims". 202 N.J. Super. at 212. When the claim is liquidated, as here, it has been long recognized that the allowance of prejudgment interest is appropriate, at least on equitable grounds, as payment for the use of monies by the party liable. Thus, in Rova Farms Resort v. Investors Insurance Co., 65 N.J. 474 (1974), the Court said:
At least in the case of a liquidated sum, prejudgment interest has been regarded by our courts as compensatory  to indemnify the plaintiff for the loss of what the monies due him would presumably have earned if payment had not been refused.... The basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.... This consideration has controlled, and interest has been imposed even where, as here, the defendant had in good faith contested the validity of the claim. [65 N.J. at 506]
Prejudgment interest in New Jersey is awarded pursuant to a "judge made" rule, Busik v. Levine, 63 N.J. 351, 356 (1973). The award is made, not as a matter of right but as a matter of discretion, to be exercised judicially in keeping with equitable principles. Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123, 131 (1976); Klein v. Hudson City, 187 N.J. Super. 603, 624 (Law Div. 1980), aff'd 187 N.J. Super. 433 (App.Div. 1982). When such interest is assessed against a governmental agency "particular circumspection" is required. Ibid.
In the present case, Cinnaminson has had the use of monies unlawfully obtained through an old ordinance never modernized, either to reflect current statutes or to avoid the unfairness of double inspection fees. Plaintiff motel owners have been deprived of the use of those monies. Elementary considerations of equity require the motel owners to be made whole. Prejudgment interest is therefore allowed to the date the fees due the association by reason of this opinion are paid. The rates to be applied are those set forth in R.4:42-11. Those rates fairly reflect the market value of the monies collected by Cinnaminson absent any alternative contentions. The association, correctly calculates the interest due, as of September 30, *175 1987, at $30,771.12. The total amount due the association, as of that date therefore, is $85,071.12.
NOTES
[1] No court has considered the question of whether the words "more restrictive" are unconstitutionally vague. As appears from the discussion below analyzing the provisions of the ordinance and comparing them with the Hotel and Multiple Dwelling Law, the application of the "more restrictive" language is not easy. However, counsel, when invited by the court to address the vagueness question, agree that the language meets constitutional requirements. Under the circumstances, the issue is not addressed in this opinion.
[2] The Dome Court also said "Municipalities may therefore establish remedial measures for violations of their own housing codes, so long as the content of the codes themselves is no less restrictive than State regulations." Id. at 233. Cinnaminson therefore argues that it may enforce all provisions contained in its ordinance which are at least equal to the State's restrictions. That issue, however, was not before the Supreme Court in Dome. It dealt with the question of preemption, not the question of equal restrictions. Its comment is therefore dicta, not binding on this court. Further, logic compels a different reading of the statute. If the Cinnaminson ordinance simply contained the exact language of the Hotel and Multiple Dwelling Law, the two laws would be equally restrictive. Cinnaminson would thereby control multiple dwellings within its jurisdiction while adding nothing to the rules which empower the State to act. This cannot have been the intent of the Legislature or the meaning of the Supreme Court's off-hand comment. A liberal reading of the act, as required by its own terms, demands that control of multiple dwellings reside in the State unless a local ordinance is clearly "more restrictive." The statute, by express language, requires "more restrictive," emphasis supplied, ordinances or regulations. There is, in any event, no question of "equal" restriction by the Cinnaminson ordinance. It is less restrictive than the act and its regulations.
[3] Based in part on "information and belief" which does not comply with our rule requirements. However, if the fees were not paid the association's members remain liable to pay them. The equities are no different.