**606 A.2d 412**

CITY OF PLAINFIELD, PETITIONER–APPELLANT,
v. STATE HEALTH BENEFITS COMMISSION,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 7, 1992—Decided May 6, 1992.

Before Judges ANTELL, LONG and BAIME.

*James P. Granello* argued the cause for appellant (*James P. Granello* on the brief).

*Olga E. Bradford,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel; *Olga E. Bradford* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This appeal presents questions of first impression under the New Jersey State Health Benefits Program Act (*N.J.S.A.* 52:14–17.25 through –17.45). Under the Act, public employers may purchase medical-hospitalization insurance coverage for their employees through the State Health Benefits Commission. *N.J.S.A.* 52:14–17.28; *N.J.S.A.* 52:14–17.37. Participating employers may choose to pay the premiums of eligible retired employees to the Division of Pensions. *N.J.S.A.* 52:14–17.38. In addition, public employers may, but need not, extend benefits to former employees who retired prior to the date that the public entity began participating in the state program. *Ibid.* If the public employer adopts this course, it is obliged to pay the premiums of the retired individuals. *Ibid.* Where the local governmental employer does not opt to extend benefits to prior retirees, these employees may nevertheless join the program, but apparently at their own expense.

The City of Plainfield (City) initially entered the program in 1974. However, in 1982, the City voluntarily terminated its participation. Between 1982 and 1987, retirees were covered under a locally-administered retirement program. In 1987, the City rejoined the state health program. In 1989, the City adopted a resolution under which it agreed to pay the premiums of all retirees who had left their employment after it rejoined the program. The City nevertheless opted not to extend bene-

fits to individuals who had retired in the interim period in which it had not participated in the program. The Division of Pensions directed the City to remit the premiums of those retirees, claiming that they were eligible and covered under the state plan. The City refused on the basis that it had chosen not to extend benefits to individuals who had retired prior to its reentry into the program. The dispute was referred to the Office of Administrative Law as a contested case. The administrative law judge determined that *N.J.S.A.* 52:14–17.38 conferred discretion on participating public employers to decide whether to provide benefits to former employees who left service prior to their entry into the program. Since the City had exercised that power and had not extended benefits to this otherwise eligible class, the ALJ found that it was not obliged to contribute the disputed premiums. The Commission rejected the ALJ's recommendation. In its written findings and conclusions, the Commission determined that individuals who had retired in the interim period when the City was not a participant in the state plan were nevertheless eligible and covered under the program. The City was directed to remit the premiums of those individuals. We reverse.

The legislative history sheds some light on this arcane subject. The State Health Benefits Program was adopted in 1961. *N.J.S.A.* 52:14–17.25. The enabling legislation created the Commission, which was charged with the responsibility of establishing a medical-hospitalization plan for employees of state agencies. *N.J.S.A.* 52:14–17.27. In order to accomplish this objective, the Commission was empowered to "establish rules and regulations ... reasonable and necessary for the administration of [the Act]," *ibid.*, and was authorized "to negotiate with and arrange for the purchase" of suitable coverage. *N.J.S.A.* 52:14–17.28.

In 1964, the Act was amended to permit local governmental agencies to voluntarily participate in the program. *N.J.S.A.* 52:14–17.34. An employer eligible for participation "may elect"

to enter the program by resolution, in which case it is "subject to ... the rules and regulations of the [C]ommission." *N.J.S.A.* 52:14–17.37. The articulated objective of these provisions is to provide coverage to local government employees in a manner generally congruent with that of state employees. *N.J.S.A.* 52:14–17.36. Moreover, *N.J.S.A.* 52:14–17.28 states that the "[C]ommission shall not enter into a contract ... unless coverage is available to all eligible employees" under the terms provided in other sections.

As we noted earlier, local governmental agencies may pay the premiums of retired employees and their dependents covered under the program. *N.J.S.A.* 52:14–17.38. The same section states that a public employer may include otherwise eligible employees who retired prior to the date the public entity became a participant in the program. *Ibid.* Because this provision is critical to resolution of the issue before us, we quote it verbatim.

"Retired employee and his dependents" may, upon adoption of an appropriate resolution therefor by the participating employer, also include otherwise eligible employees, and their dependents, who retired from a State or locally-administered retirement system prior to the date that the employer became a participating employer in the New Jersey State Health Benefits Program....

*Ibid.*

Although this section is not a model of clarity, its purpose is to provide a public employer with the choice of extending or not extending medical-hospitalization benefits to employees who left service prior to the date it enrolled in the state program. This legislative design is made manifest in the Senate County and Municipal Government Committee statement that accompanied the bill. *Senate County and Municipal Government Committee Statement to Senate, No. 660* (1978). According to the statement, the legislative design is to "permit local governmental employers, by resolution, to extend the benefits of the State Health Benefits Program to their employees who retired prior to the local government's participation in the program." *Ibid.* Because the cost of taking this course was estimated to be "as high as $6.5 million in 1979 and $7.0 million in 1980," the

Committee emphasized that it was an option the public employer could choose not to undertake. Since the provision of benefits to prior retirees was regarded as a "permissive extension of an existing program, and not a mandated new program," the Committee stressed that the costs "would not be exempted from the local budget caps." *Ibid.* The Committee added that "[t]his, of course, would be a factor each municipality would have to consider in deciding whether or not to extend such benefits to retired employees." *Ibid.*

The Commission contends that where the local public employer decides not to include prior retirees in the plan, these individuals may voluntarily pay the premiums and become "covered" employees. In this event, the Commission claims that the public employer then becomes responsible for remitting the premiums on behalf of these persons. We reject this argument, because it renders nugatory the choice of the public employer not to undertake the payment of premiums for employees who retired prior to its participation in the state health benefits plan. The Commission's construction of *N.J.S.A.* 52:14–17.38 is inconsistent with the plain meaning of the statutory language and is not consonant with the objective of the 1978 amendment as articulated in the Senate Committee's statement.

The Commission also argues that because the City originally commenced its participation in the state program in 1974, it cannot refuse to extend benefits to employees who retired after that date. In other words, the Commission asserts that the City may refuse to extend benefits only to former employees who retired prior to 1974. This argument overlooks the fact that the City voluntarily terminated its participation in the program in 1982 and did not reenter the plan until 1987. By its very terms, *N.J.S.A.* 52:14–17.38 states that a public employer may choose to deny benefits to employees who retired prior to the date the local governmental agency "became a participating employer in the New Jersey State Health Benefits Program." In the period between 1982 and 1987, the City was not a

"participating employer" in the state plan. Under these circumstances, the City could rightfully deny benefits to those who retired in this interim period, when it was not a "participating employer." On the other hand, those who retired in the period between 1974 and 1982, when the City was a "participating employer," are eligible for benefits and are covered under the program. The City must pay the premiums of those individuals.

*N.J. Policemen's Benev. Ass'n v. N.J. State Health Benefits Comm'n,* 153 *N.J.Super.* 152, 379 *A.*2d 285 (App.Div.1977) is inapposite. There, the Commission rejected a collective bargaining agreement which provided that the City of Linden would pay the premiums for medical-hospitalization insurance coverage for policemen retiring after a certain date. Because all of the retirees, those retiring before and those retiring after the contract's "cut-off" date, were "eligible" for benefits, we agreed with and sustained the Commission's actions. We said that the collective bargaining agreement violated the statutory prohibition which bars the Commission from "enter[ing] a contract under [the] Act unless coverage is available to all eligible employees." *Id.* at 155, 379 *A.*2d 285 (citing *N.J.S.A.* 52:14–17.28). Our opinion was silent respecting whether the excluded class that was denied benefits under the collective bargaining agreement consisted of employees who had retired prior to the local governmental agency's participation in the state program, and, if so, whether the public employer had exercised its option under *N.J.S.A.* 52:14–17.38 to extend benefits to prior retirees. Because the subject was not addressed, we must assume that these questions were not considered.

We note that *N.J. Policemen's Benev. Ass'n* was decided prior to the amendment of the statute in 1978 and the clarifying statement of the Senate Committee to which we have referred. Whatever else may be said, these developments clearly disclosed the intent of the Legislature to provide local governmental employers with the option whether or not to extend benefits

to employees who retired prior to their participation in the program.

We add these parting comments. We are not happy with the result we have reached. The option granted to local governmental employers by *N.J.S.A.* 52:14–17.38 is antithetical to the Legislature's otherwise longstanding interest in assuring equality of treatment for all public employees. We stress that the choice is not ours to make. The dilemma can be stated with disarming ease. To saddle public employers with the immense cost of funding health insurance for all retirees might discourage those otherwise desirous of joining the state health benefits program from taking that course. The Legislature sought to accommodate these competing values by giving local governmental employers the right to choose which option to take. Here, the City chose not to undertake the burden of paying premiums for employees who retired prior to its reentry into the program. The Commission was in error in directing the City to undertake this burden.

In light of the conclusion we have reached, the City is entitled to reimbursement for coverage payments that have been wrongfully collected by the Division of Pensions. Since the Division has had the use of these amounts by reason of its misapplication of *N.J.S.A.* 52:14–17.38, pre-judgment interest should be awarded. *See Busik v. Levine,* 63 *N.J.* 351, 358, 307 *A.*2d 571, *appeal dismissed,* 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973); *County of Essex v. Waldman,* 244 *N.J.Super.* 647, 667, 583 *A.*2d 384 (App.Div.1990). We recognize that assessment of interest against a governmental agency requires particular circumspection. *See Consolidated Police and Firemen's Pension Fund Comm'n v. City of Passaic,* 23 *N.J.* 645, 654, 130 *A.*2d 377 (1957); *Cinnaminson Motel Owners Ass'n v. Cinnaminson Tp.,* 231 *N.J.Super.* 163, 174, 554 *A.*2d 1372 (Law Div.1987). Here, however, both parties are governmental

bodies.  Under these circumstances, we are of the view that the City is entitled to interest on the amounts wrongfully collected.

Reversed.