IN THE MATTER OF AN INCREASE IN FEES BY THE NEW JERSEY STATE BOARD OF DENTISTRY.

Argued September 24, 1980—Decided December 16, 1980.

*Arthur Meisel* argued the cause for appellants New Jersey Dental Association and Frederick Harvey, D. D. S. (*Jamieson, McCardell, Moore, Peskin & Spicer*, attorneys).

*Bruce H. Snyder*, Deputy Attorney General, argued the cause for respondent State Board of Dentistry (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

PASHMAN, J.

This case presents the question whether a State agency which, pursuant to *N.J.S.A.* 45:1–3.2, collects fees under the authority of a rule that is judicially invalidated is obligated to refund monies collected in excess of its statutory authority. We answer this question in the affirmative and accordingly remand the case to the New Jersey State Board of Dentistry for a calculation of a refund based on the guidelines set out below.

Until 1974, the license and registration fees charged by the New Jersey State Board of Dentistry were set by statute. *N.J.S.A.* 45:6–10. In 1974, the Legislature delegated to the Board of Dentistry and several other licensing boards the authority to set by rule their "charges for examinations, licensures and other services." *N.J.S.A.* 45:1–3.2.

On November 6, 1975, the Board of Dentistry (Board), pursuant to this new statutory authority, published in the New Jersey Register a proposal for an increase in the registration fees for dentists and dental hygienists. Among other things, the Board proposed to increase the fees for dentists in active practice within the State from $8 per year to $50 every two years.

The day after publication, the New Jersey Dental Association (Association) wrote to the Board calling its attention to pertinent language in the recently enacted enabling statute:

> Any board's or commission's charges established, prescribed or changed pursuant to this section shall be established, prescribed or changed to such extent as shall be necessary to defray all proper expenses incurred by the board or commission in the performance of its duties *but such charges shall not be fixed at a level that will raise amounts in excess of the amount estimated to be so required.* [*N.J.S.A.* 45:1–3.2 (emphasis added)]

The Association requested information about the Board's estimated expenses so that it could evaluate the legality of the proposed increases.

The Board promptly responded by providing data showing that, for the first year under the new fee schedule, projected receipts were $184,100 and estimated expenses were $156,800. It is not clear from the record whether the Association formally objected to the proposed fee increases following the receipt of this information. The Board adopted the proposed fee schedule

without change on December 10, 1975. The schedule became effective on January 14, 1976.

The Association immediately appealed to the Appellate Division for review of the Board's action, *R.* 2:2–3(a)(2), but did not seek a stay of the revised fee schedule pending judicial review, *R.* 2:9–7.

Litigation was prolonged by settlement negotiations which ultimately broke down. The Appellate Division heard argument in February 1979 on the Association's request that the revised fee schedule be invalidated and that the court "order the return of funds collected pursuant thereto." The court rendered its decision holding that "the Board's amended regulation, *N.J.A.C.* 13:30–8.1, is in conflict with *N.J.S.A.* 45:1 3.2 and is therefore invalid." 166 *N.J.Super.* 219, 223 (App.Div.1979). The court said,

[O]nce its estimate is made, the Board may not establish its charges in disregard of the clear statutory language that these "shall not be fixed at a level that will raise amounts in excess of the amount estimated to be required." [*Id.* at 222]

However, the court did not refer to the Association's request for a refund. Neither party petitioned this Court for certification of the Appellate Division's judgment.

In the following months, the Association made several oral demands to the Board for a refund of the monies collected under the invalidated regulation. Failing to obtain satisfaction in this way, the Association filed a motion in aid of litigant's rights, *R.* 1:10–5, in the Appellate Division seeking an order requiring the Board "to refund to individual dentists monies collected by [the Board] under regulations adjudged to be invalid." This motion was denied in July 1979.

The Association then filed a petition for rehearing, *R.* 2:11–6, and, alternatively, a second motion in aid of litigant's rights, in which it now sought an order directing "a refund of the difference between the statutory registration fee contained in *N.J. S.A.* 45:6–10, and the amount improperly collected under *N.J. A.C.* 13:30–8.1." These too were denied.

The Association then petitioned this Court for certification, seeking review of the denials of its motions in aid of litigant's

rights. The Board cross-petitioned for review of the Appellate Division's decision of February 1979 invalidating the new fee schedule. We granted the Association's petition, 81 *N.J.* 412 (1979), and denied the Board's cross-petition, 81 *N.J.* 413 (1979). We now reverse.[1]

██ We hold that the case should be remanded to the State Board of Dentistry for the calculation and distribution of a refund based on the difference between the fees collected during the years in question and the Board's *actual*[2] expenses during those years. That refund should be distributed to all dentists who paid registration fees under the invalidated fee schedule.

Basic principles of honesty and equity mandate this result. Furthermore, there is no basis in law for the Board to retain the disputed funds. As the Appellate Division correctly held, these funds were collected in violation of the statute under a fee schedule which the Association contested continually on behalf of its membership from the first available opportunity.

Indeed, in its first challenge of the disputed fee schedule before the Appellate Division, the Association sought not only a

---

[1] We recognize that the Association may have followed a procedure that was technically inappropriate. A motion in aid of litigant's rights is normally reserved as a means to compel compliance with a judicial order. Here the Appellate Division's judgment invalidating the fee schedule did not include an order to refund overpayments. Nevertheless, we reach the merits of the right to a refund to bring this lengthy litigation to an end.

[2] *N.J.S.A.* 45:1-3.2 provides that fees "shall *not* be fixed at a level that will raise amounts in excess of the amount *estimated* to be ... required." (Emphasis added.) However, the purpose of the statute is to ensure that fees set by State agencies pursuant to the statute will not generate revenues in excess of the needs of the agencies. Consequently, to determine the proper amount to be refunded for collections made in past years, actual expenses, not estimated ones, are the proper measure.

Naturally, estimated expenses continue to be the correct basis for calculating fees set prospectively under the statute. We note that mere descrepancy between fees collected and estimated expenses will not create an entitlement to a refund. Since fees are customarily set in round figures, it is not to be expected that revenues will ever *precisely* equal estimated expenses. Refunds are justified only where, as here, fees are set in manifest disregard of the statute.

declaration that the fee schedule was invalid but a refund of illegally collected fees. The Appellate Division, while holding that the fee schedule violated the enabling statute, made no mention of the requested refund and rejected the Association's subsequent efforts to obtain a refund. In our view, the Association's entitlement to a refund of excess fees followed naturally from the determination that these fees were illegally exacted.

To hold otherwise would allow the Board to enrich itself unjustly at the expense of the members of the Association. It would violate one of the cardinal principles of the common law, requiring restitution to prevent unjust enrichment. *E. g., Brinkmann v. Urban Realty Co.*, 10 *N.J.* 113, 119 (1952); *Hartford Accident & Indemnity Co. v. Benevento*, 133 *N.J.L.* 315, 319 (E & A 1945); *McGregor v. Erie Railway Co.*, 35 *N.J.L.* 89, 112 (Sup.Ct. 1871). *See also* Restatement of Restitution § 1 (1937).

A long line of decisions in this State establishes the principle that when a tax already collected is set aside by judicial decision, "the law raises an assumption to refund the money which can no longer be honestly retained." The taxing entity has "not a particle of right to the money in question," which is due to the taxpayer "according to the principles of common honesty." *Mayor of Jersey City v. Riker*, 38 *N.J.L.* 225, 227–228 (Sup.Ct. 1876); *accord, City of Elizabeth v. Hill*, 39 *N.J.L.* 555, 557–558 (Sup.Ct. 1877); *Mayor of Jersey City v. O'Callaghan*, 41 *N.J.L.* 349, 350 351 (E & A 1879); *Ocean Grove Camp Meeting Association v. Borough of Bradley Beach*, 91 *N.J.L.* 364, 366–367 (Sup.Ct. 1918); *Suburban Department Stores v. City of East Orange*, 43 *N.J. Super.* 448, 450 (Law Div. 1957); *see also Smith v. Mayor of Jersey City*, 52 *N.J.L.* 184 (E & A 1889); *Hahne Realty Corp. v. City of Newark*, 119 *N.J.L.* 12 (E & A 1937); *Milmar Estate, Inc. v. Borough of Fort Lee*, 36 *N.J.Super.* 241 (App.Div. 1955); Restatement of Restitution § 75(1) (1937).

In this case, the Board has "not a particle of right" to the registration fees collected in excess of the amounts permitted by *N.J.S.A.* 45:1–3.2. In the welter of arguments it has made in

support of its refusal to return these overcharges, the Board has not offered a single substantive reason why it should not issue a refund.

■ The primary exception to this principle of restitution is the doctrine commonly known as the "volunteer rule." It provides that "where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible against him, he cannot recover it back." *City of Camden v. Green,* 54 *N.J.L.* 591, 593 (E & A 1892); *accord, Shoemaker v. Board of Health of Gloucester City,* 83 *N.J.L.* 425, 426–427 (Sup.Ct. 1912); *see also* Restatement of Restitution § 75(1)(b) (1937). The best explanation of this rule as it applies to overpayment of taxes was given many years ago:

> Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back. Ignorance or mistake of law by one who voluntarily pays a tax illegally assessed furnishes no ground of recovery. [3 T. Cooley, Taxation § 1282 at 2565 (4th ed. 1924)]

In *Camden v. Green, supra,* this rule was applied by the court to deny recovery to a party who paid $500 to the city of Camden for a liquor license shortly after a newly created county board of license commissioners lowered the fee for liquor licenses in the city of Camden to $300. The court's decision turned on the fact that the party seeking the license paid the $500 fee to the city with "full knowledge" that the lower fee had been set by the county board. 54 *N.J.L.* at 592–593. It does not appear from the opinion that the licensee protested the discrepancy in license fees or otherwise brought the matter to the attention of the board of excise commissioners of the city of Camden at the time he obtained the license.

■ This latter fact alone distinguishes the *Green* case from this one and from the line of cases beginning with *Jersey City v. Riker, supra,* in which the parties paying what they believed to be an excessive tax protested the higher levy from the outset. The present case involved a form of payment under duress. It is well–established that the payment of a tax in order to avoid the loss of the payor's right to practice his profession or to

continue in business renders the payment involuntary and removes it from the ambit of the volunteer rule. *Gaar, Scott & Co. v. Shannon*, 223 *U.S.* 468, 471, 32 *S.Ct.* 236, 237, 56 *L.Ed.* 510, 512 (1912); *Panitz v. District of Columbia*, 112 *F.*2d 39, 41 (D.C.Cir. 1940); *Edward P. Allison Co. v. Village of Dolton*, 24 *Ill.*2d 233, 235–236, 181 *N.E.*2d 151, 153 (1962); *Five Boro Electrical Contractors Ass'n v. City of New York*, 12 *N.Y.*2d 146, 149–150, 187 *N.E.*2d 774, 775, 237 *N.Y.S.*2d 315, 317 (1962); *Manufacturer's Casualty Ins. Co. v. Kansas City*, 330 *S.W.*2d 263, 267, 80 *A.L.R.*2d 1035, 1039–1040 (Mo.Ct.App. 1959); Restatement of Restitution § 75, Comment f at 323 (1937). The dentists here had no choice but to pay the registration fee if they were to continue to practice their profession legally. *N.J.S.A.* 45:6–13.

The Board does not challenge the Association's right to a refund under the ordinary principles of restitution just stated. Instead, the Board argues that a refund would be inappropriate in the circumstances of this case. In particular, it contends that the Appellate Division's decision, *supra*, invalidating the 1976 fee schedule, should be read prospectively, because a refund would financially cripple the Board. This argument supposes that the Association is seeking a refund of the difference between the fees paid under the invalidated fee schedule, *N.J. A.C.* 13:30–8.1, and the previous statutory fee, *N.J.S.A.* 45:6–10. This refund would amount to approximately half of the Board's operating funds over the past four years. In light of the relief that the Association is seeking before this Court, we need not consider whether a refund of this amount would be contrary to public policy. *Cf. Borough of Neptune City v. Borough of Avon-by-the-Sea*, 61 *N.J.* 296, 310–311 (1972) (declining to give retroactive effect to decision invalidating discriminatory beach use fees because of practical confusion and unfairness to municipality). The Association is now demanding a refund of only the difference between the fees collected and the Board's actual expenses during the period in question. Such a refund obviously will not disrupt the operations of the Board and is therefore not contrary to public policy.

The Board also argues that the appropriations clause of the State Constitution bars a refund. That clause mandates that "[n]o money shall be drawn from the State treasury but for appropriations made by law." *N.J.Const.* (1947), Art. VIII, § 2, par. 2. The Board claims that it has deposited the surplus funds in the State treasury pursuant to *N.J.S.A.* 45:1-3, and consequently any refund of these monies would require an appropriation.

We need not reach that issue. No new appropriation is necessary here because the Legislature has set aside in the current appropriations act "sums required to refund amounts credited to the State Treasury which do not represent state revenue." *L.* 1980, *c.* 56 (S. 1309 of 1980 at 158). The funds necessary for the refund sought by the Association have thus already been appropriated.

We reverse the judgment of the Appellate Division and remand the case to the State Board of Dentistry for calculation and distribution of the proper refund to individual dentists.

*For reversal and remandment*—Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*For affirmance*—none.