230 N.J. Super. 430 (1989)
553 A.2d 858
KODE HARBOR DEVELOPMENT ASSOCIATES, A PARTNERSHIP, PLAINTIFF-RESPONDENT,
v.
COUNTY OF ATLANTIC, NEW JERSEY, THE DEPARTMENT OF REGIONAL PLANNING AND DEVELOPMENT, THE DIVISION OF PLANNING, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1989.
Decided February 6, 1989.
*432 Before Judges DEIGHAN, BAIME and D'ANNUNZIO.
Michael Winkelstein, Atlantic County Counsel, argued the cause for appellants (Michael Winkelstein, attorney; Michael Winkelstein and Terry J. Dailey, Assistant County Counsel, on the brief).
Barbara Sardella argued the cause for respondents (Dilworth, Paxson, Kalish & Kauffman, attorneys; Barbara Sardella and Nelson C. Johnson on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents difficult questions of statutory construction relating to various sections of the County Planning Act (N.J.S.A. 40:27-1 et seq.). N.J.S.A. 40:27-6.6 empowers a county planning board to review a site plan where the property to be developed is located "along [a] county road[]." The same statute confers jurisdiction on a county planning board to review a site plan where the proposed development will affect "county drainage facilities as provided by subsection e [N.J.S.A. 40:27-6.6e] of this section." The principal question presented by this appeal is whether a county planning board is authorized to review a site plan and require the developer to contribute to off-site road improvements where the property neither fronts on nor abuts a county road. An ancillary issue is whether a county planning board, whose jurisdiction rests solely on the basis that development of the property will affect county drainage facilities, may compel a developer to contribute to off-tract road improvements as a condition of site plan approval.
We hold that a county planning board may not assert jurisdiction on the basis that the development is situated "along [a] county road[]" under N.J.S.A. 40:27-6.6 unless the property actually abuts or fronts on a county road. In our view, the legislature did not intend to confer county-wide site plan review *433 jurisdiction on a county planning board in instances where the development is merely in close proximity to a county road. We are also satisfied that a county planning board is not statutorily authorized to require a developer to contribute to off-site road improvements where its jurisdiction is predicated solely on the ground that development of the property will affect county drainage facilities.

I.
This is an appeal by defendants Atlantic County and its Division of Planning (Division) from a declaratory judgment in favor of plaintiff Kode Harbor Development Associates. The salient facts are not in dispute, and need not be recounted at length because they are accurately and fully recited in the trial court's written opinion.
Plaintiff owns property which fronts on the south side of Cardiff Circle in Egg Harbor Township. The road upon which this property abuts is state highway U.S. 40 and 322, the Black Horse Pike, a road operated and maintained by the New Jersey Department of Transportation. The record reflects that U.S. 40 is a major east-west arterial highway which transverses the state from Delaware to Atlantic City. At the Cardiff Circle and for many miles on both the east and west sides of plaintiff's property it is a four-lane divided highway. The nearest county highway is Tilton Road (County Route 563), which is for most of its length a two-lane road. Where it merges with Route 40 at the Cardiff Circle it becomes part of the four-lane highway which extends from the circle to a point immediately west of the Garden State Parkway. At that point, Route 40 veers to the left and Tilton Road continues in an eastward direction to its terminus at Ventor Avenue in Margate. The total length of Tilton Road is approximately ten miles.
It is to be emphasized that plaintiff's property is not actually on a county road, but instead borders Cardiff Circle where U.S. Route 40 and Tilton Road merge. As we have mentioned, *434 Cardiff Circle is owned and controlled by the State of New Jersey. Accordingly, although Tilton Road feeds into the circle and continues briefly (as part of Route 40) on the easterly side of the circle, plaintiff's site does not abut any portion of it. Stated differently, that portion of Tilton Road which "includes" the Cardiff Circle is a state road. The county portion of Tilton Road ends about 340 feet north of plaintiff's property and picks up again about 2,400 feet to the south.
Plaintiff intends to develop the site as a commercial shopping center. Because it includes more than one acre of impervious surface, plaintiff was required, as part of the approval process, to submit the site plan to the Division for its review. The Division's purported authority rests on N.J.S.A. 40:27-6.6 which, as we have noted, grants to county planning boards jurisdiction to review site plans for land development along county roads or where the development contains one acre or more of impervious surfaces which affects, either directly or indirectly, county drainage facilities.
Plaintiff's site plan anticipated utilization of a drainage ditch which runs behind the project and which is referred to as the "Maple Run" drainage. Although the details are not altogether clear, it would appear that utilization of that ditch will impact on an existing drainage pipe owned by the county and may require its enlargement. No proof was submitted to the trial court as to what the cost of that enlargement would be, and the Division made no assessment against plaintiff in that regard. It is clear, however, that the improvements which are anticipated as part of the Tilton Road Corridor Improvement Program, which we will describe shortly, do not include any improvement to this particular county culvert, nor do they relate in any way to plaintiff's drainage needs.
In any event, following its review of plaintiff's site plan, the Division conditionally approved the development, but required payment of $161,000 to Atlantic County for off-tract improvements to various county highways, otherwise known as the *435 Tilton Road Phase I Improvement Program or the Tilton Road Corridor Improvement Program. Because the validity of this condition is in dispute, we will describe the Tilton Road improvement program in some detail.
James Rutala, a licensed professional planner who was planning director for the county, explained the nature and purpose of the Tilton Road corridor program. According to Rutala, the Tilton Road area, which is zoned largely commercial with some industrial uses, has been referred to as the "golden mile" or "the downtown of Atlantic County." In the early 1980's, the county undertook a comprehensive master plan study which resulted in a number of recommendations about highway and drainage improvements. The impetus for the county's creation of this master plan came in 1983 when approximately a dozen developers proposed projects of varying sizes for land development in the Tilton Road area. At that point the county realized the necessity to determine each project's impact on the area, particularly in view of the traffic which would be generated thereby. This represented a departure from the prior procedure where, with each new proposed development, the county would review the plan individually with no real consideration of the overall picture. With the implementation of a comprehensive master plan the proposed development's impact on the area as a whole would be examined in the approval process. Intensified development and highway improvements necessitated by traffic would also result in drainage problems. Therefore, improvements in drainage facilities were also considered.
Two reports were commissioned, one in 1984 which examined the Tilton Road corridor area and proposed improvements for traffic and drainage facilitation and another in 1985 which examined the cost allocation mechanism for those highway improvements. The improvement program, described in the 1984 corridor report, consisted largely of roadway widening and resurfacing to facilitate traffic movement and the construction of a drainage connection necessitated by the widening of Tilton Road and other nearby county highways.
*436 Robert Rodgers, a principal in the Orth-Rodgers firm which provided the county with a report supplementing the corridor study, testified that he was responsible for determining the mechanism by which the cost of the improvements to that area would be financed. The primary purpose of his firm's 1985 report was to arrive at a mechanism to develop a pro rata share cost allocation among these different developments along the corridor, including plaintiff's property. He accomplished this task by determining first the amount of traffic that would be generated by each proposed development. Then percentages were calculated to reflect the individual developer's traffic generation as a percentage of the total traffic on the corridor. With respect to plaintiff's project it was determined that it would generate a total of 780 inbound and outbound trips from the site. A total of about 8,000 new trips per hour would be generated by the development of all of the projects, underscoring the need for the improvements set out in the 1984 corridor study. Apparently this trip generation method of cost allocation is accepted in the industry and the methodology is set forth in the Institute of Transportation Engineers Informational Report (3 ed. 1982). Using definitions and formulas found in that report, trip generation was estimated for evening peak hours based upon the square footage of the particular development for commercial properties and upon the number of dwelling units for residential projects. Under the formula applied to these calculations to determine the allocation to each developer, the developer's share of the cost of roadway improvements was equal to the future peak hour traffic generated by the project. Thus, according to Rodgers, "if a developer generated 1% of the traffic in that corridor by virtue of the development, the developer was to pay 1% of the improvement cost." With respect to the Tilton Road corridor improvement plan, it had already been determined that the public was to pay 57.5% of the cost of improvements, leaving the balance to be paid by the developers of the new projects.
*437 In July 1985 plaintiff commissioned a traffic impact study for its proposed Cardiff Plaza Shopping Center from Horner & Canter Associates. The study concluded that the proposed shopping center would have no adverse traffic impact but acknowledged that the improvements planned by the county for the immediate area would "further enhance the quality of traffic flow." The record discloses that the Division calculated the assessment to plaintiff based not only on the Orth-Rodgers report but the Horner & Canter study as well. The Horner & Canter report estimated that only 68% of the trips to and from the shopping center would pass through the Tilton Road corridor because the shopping center was at the edge of the corridor. Timothy Chelius, a licensed professional planner employed by Atlantic county, acknowledged that only those trips which passed through the corridor would affect the intersections and highway linkage which the county intended to improve. Consequently, there was an adjustment in plaintiff's assessment from $238,000 to $161,000.
Following the Division's conditional approval of the site plan, plaintiff instituted an action in lieu of prerogative writ, claiming that the assessment was invalid. After conducting a plenary hearing, Judge Gibson rendered a comprehensive written opinion in which he held that the condition imposed by the Division requiring plaintiff to contribute to off-tract road improvements constituted an ultra vires act. Initially, the trial judge construed the term "along county roads," which appears in N.J.S.A. 40:27-6.6, as requiring as a jurisdictional prerequisite that the property to be developed must abut or front on a county road. Since it was uncontradicted that plaintiff's property had no frontage on Tilton Road, a county highway, the judge determined that the Division could not properly assert jurisdiction on the basis that the development was situated "along county roads," as required by N.J.S.A. 49:26-6.6. Instead, the judge found that the Division had jurisdiction only on the basis that the development included an acre or more of impervious surfaces and that the proposed project would affect county *438 drainage facilities. Although Judge Gibson questioned whether a county planning board, whose jurisdiction is based solely upon the fact that a proposed development would affect a county's drainage facilities, could condition site plan approval on the developer's contribution to wholly unrelated off-tract improvements, he chose not to resolve that issue. While noting that the Tilton Road Corridor Plan did not contemplate the upgrading of any drainage facility affected by plaintiff's project, and, therefore, there did not appear to be a "rational nexus" between the improvements planned by the county and any corresponding benefit to the property to be developed, the judge left open the question whether the Division could impose under the statute conditions not germane to drainage problems. Rather, the judge found that the Tilton Road improvement project did not arise "as a direct consequence" of plaintiff's development. In this respect, the judge determined that "[t]here was no proof ... plaintiff's development, any more than ongoing [projects] in the area as a whole, produced the need for these improvements in any direct way." Judge Gibson thus concluded that the condition "imposed by the Division relating to plaintiff's monetary contribution to off-site improvements was beyond the statutory authority [granted by N.J.S.A. 40:27-6.6] and must therefore be stricken." Accordingly, a judgment was entered declaring the condition invalid.
We are in complete agreement with Judge Gibson's determination that the condition imposed by the Division was not authorized by N.J.S.A. 40:27-6.6 and thus constituted an ultra vires act. However, we arrive at that conclusion for slightly different reasons.

II.
Initially, we are in complete accord with Judge Gibson's decision that the term "along county roads," which appears in N.J.S.A. 40:27-6.6, means that the property to be *439 developed must actually abut, front on or border a county road. Stated another way, a county planning board cannot assert jurisdiction merely on the basis that a development is in close proximity to a county road, or is in a line parallel with its length or direction, as the Division appears to suggest.[1] In our view, the statutory language confines a county planning board's jurisdiction to the review of site plans pertaining to properties which abut, front on or border county roads or which affect county drainage facilities.
N.J.S.A. 40:27-6.6 is the operative statute relating to site plan review by county planning boards. The statute reads in pertinent part as follows:
The governing body of any county having a county planning board may provide for the review of site plans for land development along county roads or affecting county drainage facilities as provided in subsection e. of this section and for the approval of such development as hereinafter set forth and limited for the purpose of assuring a safe and efficient county road system. Such review and approval shall be in conformance with procedures and standards adopted by resolution or ordinance as appropriate by the governing body.... These procedures and standards shall be limited to:
a. The submission of a site plan, prior to the issuance of a municipal building permit, ....
b. The requirement of dedication of additional right-of-way in accordance with the county master plan....
c. The requirement of physical improvement subject to recommendations of the county engineer relating to the safety and convenience of the traveling public, including drainage facilities, other highway and traffic design features as may be deemed necessary on such county road or roads in accordance with the engineering and planning standards established in the site plan review and approval resolution or ordinance of the governing body.
* * * * * * * *

*440 e. The requirement of adequate drainage facilities and easements when, as determined by the county engineer in accordance with county-wide standards, the proposed site plan will cause storm water to drain either directly or indirectly to a county road or through any drainage-way, structure, pipe, culvert or facility which the county is responsible for the construction, maintenance, or proper functioning.
Site plans for land development not along a county road that include less than 1 acre of impervious surfaces are exempt from county site plan review.
As we stressed in our recital of the facts, plaintiff's project is located on and abuts a state highway. The Division contends, however, that the statute must be read broadly. Unfortunately, the County Planning Act contains no definition or explanation as to what is intended by the term "along county roads," and our research discloses no reported decisions which interpret this phrase.
At the outset, we recognize the constitutional mandate that laws concerning municipalities and counties are to be "liberally construed in their favor." N.J. Const. (1947), Art. IV, § VII, par. 11. Our Supreme Court has observed that this constitutional directive "was intended to obviate earlier judicial decisions which had taken the position that grants of power by the Legislature to its political subdivisions should be construed narrowly and that doubt as to existence of any asserted power should lead to its denial." Union Co. Bd. of Freeholders v. Union Co. Park Com., 41 N.J. 333, 339 (1964). While this constitutional rule of liberal construction has long been acknowledged, it is equally well-settled that a county's powers are restricted to those granted to it by the Legislature. See, e.g., Bergen County v. Port of N.Y. Authority, et al, 32 N.J. 303, 312-313 (1960); County of Bergen v. Dept. of Pub. Util. of N.J., 117 N.J. Super. 304, 310 (App.Div. 1971). In this respect, it has been said, albeit in a different context, that "the county's powers are only those granted to it, and the municipality remains the repository over the broad police power over local affairs." Bergen County v. Port of N.Y. Authority, et al, *441 supra, 32 N.J. at 313. The role of the county is still relatively more restricted. Ibid.
We also recognize that the Legislature specifically used the word "abut" rather than "along" when dealing with the jurisdiction of county planning boards over subdivision review. See N.J.S.A. 40:27-6.2. However, we perceive no meaningful distinction in that regard. Simply stated, we discern no legislative design to grant broader authority to county planning boards in the context of their review of site plans than they possess in their consideration of subdivisions.
We are of the view that the statute, read sensibly rather than literally, does no more than grant jurisdiction in instances in which the development either abuts a county road or affects a county's drainage facilities. In our opinion, the interpretation urged by the Division is so uncertain, obscure and amorphous as to preclude a meaningful analysis with respect to the reach of the powers of a county planning board. In the context of the facts here, for example, the Division's construction of the statute would provide it with jurisdiction over land developments adjacent to expansive stretches of highway well beyond and away from county roads. Clearly, however, the Legislature never sought to provide such a broad jurisdictional base for county planning board review.
In sum, we agree with Judge Gibson that the most logical reading of the statute leads to the conclusion that a county planning board's site plan review jurisdiction was not intended to encompass developments which are not contiguous to a county road or highway, at least where they do not affect county drainage facilities.

III.
As we noted previously, N.J.S.A. 40:27-6.6 confers jurisdiction on county planning boards to review site plans *442 "along county roads or affecting county drainage facilities...." Although the precise impact plaintiff's development will have on county drainage facilities was not fully developed by the proofs, and on the record submitted to us appears to be negligible, it is undisputed that storm water will in fact drain into the county's drainage pipe. It is also clear that plaintiff's property includes more than one acre of impervious surfaces. See N.J.S.A. 40:27-6.6e. These facts plainly provide a jurisdictional basis for county planning board review. The remaining question, therefore, is whether this jurisdictional predicate for review, resting as it does on the impact which the site has on county drainage facilities, can be fairly utilized as authority for the imposition of off-tract conditions totally unrelated to drainage. Having obtained jurisdiction over the site plan by virtue of its effect on county drainage facilities, the Division contends that it is authorized to impose off-site conditions pertaining to wholly unrelated improvements. We disagree.
N.J.S.A. 40:27-6.6e expressly defines the manner in which a county planning board may respond to developments affecting county drainage facilities. That part of the statute, subsection e, was adopted by an amendment enacted in 1981. Before that amendment, the statute expressly limited county planning board review to developments situated "along county roads." The statute, as it then existed, permitted "the requirement of physical improvements subject to recommendations of the county engineer relating to the safety and convenience of the traveling public, including drainage facilities, or other highway and traffic design features as may be deemed necessary...." (Emphasis added.) N.J.S.A. 40:27-6.6c. The statement of the Senate County and Municipal Government Committee which accompanied the amendment reveals that the Legislature intended to extend the county's jurisdiction to encompass properties which may not be located "along county roads," but which clearly affected county drainage facilities. Stated another *443 way, the legislative purpose was to authorize counties to ameliorate or correct drainage problems "for the purpose of assuring a safe and efficient county road system" (N.J.S.A. 40:27-6.6), even where the development does not abut a county road.
To recapitulate, the statute, prior to its amendment, was defective because it did not authorize county site plan review of developments, which although not bordering on county roads, nevertheless impacted on highway safety by reason of drainage problems. In order to correct this defect, the Legislature amended the statute and empowered county planning boards to review site plans of developments which do not abut county roads but which, by reason of run-off storm drainage, impact upon their safety. So posited, we perceive no legislative design to authorize a county planning board, whose jurisdiction is predicated solely upon the impact a development may have on county drainage facilities, to impose conditions and require off-tract improvements pertaining to wholly unrelated problems.
Under the amended statute, the county engineer is required to develop county-wide standards for the review of those site plans which "cause storm water to drain directly or indirectly to a county road or through a drainage right-of-way, pipe, culvert or facility for which the county is responsible...." N.J.S.A. 40:27-6.6e. Such standards are required to be established in an ordinance providing for such review. By its very terms, the statute, as amended, provides for the review of site plans for land development "affecting county drainage facilities as provided in subsection e," which, as we have stressed, deals only with storm water run-off and drainage.
We are thus convinced that a county planning board, whose jurisdiction is based solely on the fact that a development will affect the county's drainage facilities, may not attach conditions *444 to site plan approval which pertain to wholly unrelated off-tract improvements. In the context of the facts of this case, although the Division clearly had jurisdiction to review plaintiff's site plan based on the impact of the development on the county's drainage facilities, it was not authorized to require, as a condition of approval, monetary contributions for unrelated off-tract road improvements.

IV.
In light of this conclusion, we have no occasion to determine whether or not the trial judge was correct in his factual determination that there was no rational nexus between the improvement planned by the county and any benefits conferred upon or needs caused by plaintiff's project. Although the "trip generation" methodology employed by the Division bears some resemblance to the "impact fee" found to be statutorily unauthorized by our Supreme Court in N.J. Bldrs. Ass'n. v. Bernards Tp., 108 N.J. 223 (1987), we need not and do not address that difficult issue. See Divan Builders v. Planning Bd. Tp. of Wayne, 66 N.J. 582 (1975); Longridge Builders v. Planning Bd. of Princeton Tp., 52 N.J. 348 (1968); 181 Incorporated v. Salem Cty. Planning Bd., 133 N.J. Super. 350 (Law.Div. 1975), aff'd in part, rev'd. in part, 140 N.J. Super. 247 (App.Div. 1976); Harris v. Salem County Planning Bd., 123 N.J. Super. 304 (App.Div. 1973), certif. den. 64 N.J. 152 (1973). Instead, we find that the Division's authority is limited under N.J.S.A. 40:27-6.6e to requiring adequate drainage, and that the impact fee imposed is not in any real sense generated by the disposal of water from plaintiff's site.

V.
The judgment of the Law Division is accordingly affirmed.
NOTES
[1] In support of its position, the Division refers to the definition of the word "along" as appears in Webster's Third New International Dictionary, Unabridged (G & C Merriam Co., 1971):

... prep ... 1: over the length of (a surface)... in a line parallel with the length or direction of ...
adv.... 2a: in a line with the length or direction.