247 N.J. Super. 1 (1991)
588 A.2d 824
SQUIRES GATE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT-CROSS-RESPONDENT, AND NEW JERSEY SHORE BUILDERS ASSOCIATION, A NON-PROFIT ASSOCIATION, PLAINTIFF-CROSS-RESPONDENT,
v.
COUNTY OF MONMOUTH, DEFENDANT-RESPONDENT-CROSS-APPELLANT, AND TOWNSHIP OF FREEHOLD, A MUNICIPAL CORPORATION LOCATED IN MONMOUTH COUNTY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1990.
Decided March 20, 1991.
*3 Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.
Wayne J. Peck, argued the cause for appellant-cross-respondent and cross-respondent.
Robert J. Hrebek, argued the cause for respondent-cross-appellant County of Monmouth (Malcolm V. Carton, attorney).
The opinion of the court was delivered by GRUCCIO, J.A.D.
Plaintiff Squires Gate, Inc., (Squires Gate), appeals from the grant of summary judgment in favor of defendant County of Monmouth (County). The County cross-appeals from the grant of summary declaratory judgment in favor of Squires Gate and plaintiff New Jersey Shore Builders Association (Shore Builders) and from the denial of its motion to dismiss.
*4 Plaintiffs filed a complaint in lieu of prerogative writs against the County and defendant Township of Freehold (Freehold) on August 18, 1988. It alleged that the Monmouth County Planning Board (Planning Board) acted ultra vires in requiring Squires Gate to make a contribution for bridge improvements as part of the approval process for its proposed subdivision and sought the return of $93,456 which had been paid by Squires Gate. On December 20, 1988, the County filed an answer denying the complaint's allegations and asserting several affirmative defenses. Freehold filed its answer on October 19, 1988.
The briefs filed in this case indicate that on April 26, 1989, plaintiffs moved for summary judgment against the County. On June 12, 1989, the County evidently cross-moved for summary judgment and for dismissal of the complaint.[1] Plaintiffs and Freehold resolved their controversy and, on June 26, 1989, entered into a consent order dismissing all claims against Freehold.
On July 24, 1989, the motion judge, in an oral opinion, held that the County had no authority under the County Planning Act, N.J.S.A. 40:27-1 to -6.13, to require Squires Gate to make contributions for bridge improvements necessary only for road safety purposes. However, he found that Squires Gate was not entitled to a refund of its contribution because it had paid the monies without objection or notice of objection, i.e., the volunteer rule. The judge also determined that the procedural objections raised by the County were without merit.
On October 20, 1989, Squires Gate appealed the grant of summary judgment in favor of the County and the denial of its cross-motion for summary judgment. On November 2, 1989, the County filed a cross-notice of appeal challenging the motion judge's denial of its motion for dismissal and the grant of *5 Squires Gate's request for summary declaratory judgment. Shore Builders has not appealed.
There is little or no dispute between the parties regarding the facts underlying this action. It appears that Squires Gate is the owner of a subdivision known as Barker's Ridge, located on Three Brooks Road in Freehold. Squires Gate is a member of Shore Builders, an association of builders, developers, real estate agents, bankers and other entities connected with the construction industry in Monmouth and Ocean Counties. The application for subdivision approval of Squires Gate's predecessor-in-title, Bradgate Associates of New Jersey, Inc. (Bradgate), was received by the County Planning Board on May 12, 1986. On October 7, 1986, the County Planning Board's Subdivision and Site Plan Committee disapproved the project because the plan showed a widening of Three Brooks Road without the widening of its bridges. Apparently, Freehold required Bradgate to provide for the widening of the road to accommodate the additional traffic caused by the development. Freehold, of course, did not require that the bridges, which were part of the County drainage system, be widened. The Site Plan Committee concluded that the new road design would be hazardous to traffic, a fact that appears to be amply supported by a review of the plans submitted to us at oral argument. Bradgate did not appeal the disapproval.
Bradgate's counsel sought a meeting with the Monmouth County Planner to discuss the possibility of eliminating the bridge-widening requirement. The County Planner suggested that Bradgate's traffic engineer devise a design to lessen the hazards caused by the narrow bridges on the widened road. He also noted that the County might be more agreeable to Bradgate's project if it agreed to indemnify the County for any liability arising from the roadway's design.
On January 27, 1987, Bradgate's president, Roy K. DeBoer, voluntarily proposed that Bradgate post a cash escrow with the County for its proportionate share of the cost of widening the *6 bridges on Three Brooks Road. After follow-up communications with the County on February 24, 1987, and May 12, 1987, DeBoer submitted revised preliminary drawings on May 28, 1987, and requested approval of the project. His letter is enlightening and, in part, states:
in light of the fact that we have agreed to participate and contribute to a fair share cost allocation agreement entered into by several private developers in the Township of Freehold and Monmouth County for the purpose of widening the entire length of Three Brooks Road and the several culverts involved thereon.

(emphasis supplied). DeBoer also stated: "Our application with the Township for preliminary has been approved conditioned upon us resolving this issue with the Monmouth County Planning Board." "Our timeline is critical in that [the widening of the entire length of the road and associated culverts] is the only issue holding up our commencement of construction."
On June 15, 1987, the Planning Board granted Bradgate preliminary approval for the Barker's Ridge subdivision with the condition that the developer contribute its proportionate share of the cost of reconstruction of the County drainage structures on Three Brooks Road. Obviously, this not only affects the bridge as a structure, but its associated culverts. The County granted Bradgate conditional final approval for the project on August 26, 1987, subject to Bradgate's payment of $93,456 to the County for its share of reconstructing the drainage structures. Sometime thereafter, Squires Gate, successor-in-title to Barker's Ridge, forwarded a check in that amount to the County, which was received on December 4, 1987. The Planning Board granted final approval for the project on December 10, 1987. Nine months later, Squires Gate filed this action for the return of the monies paid.
The parties agree that Three Brooks Road is under Freehold's jurisdiction and that the three bridges or culverts are under the County's jurisdiction as they are part of the County drainage system. The County maintains that the portions of roadway which cross the bridges are County roads as they are part of the County-controlled bridges. Squires Gate maintains, *7 however, that the pavements are not County roads, but are under Freehold's jurisdiction. Squires Gate concedes, however, that the rest of the culverts are County-controlled.
The County contends that the motion judge incorrectly held that the Planning Board acted ultra vires in conditioning Squires Gate's subdivision approval upon its payment of a share of the cost of widening the necessary bridge and associated structures. The judge based his holding on two conclusions: (1) neither the County Planning Act nor the Monmouth County Site Plan Resolution granted the Planning Board the authority to impose such charges and (2) as the Planning Board's jurisdiction was based solely on the fact that the development would affect County drainage facilities, the Planning Board could not, under N.J.S.A. 40:27-6.2, -6.6, attach unrelated conditions to its approval.
The judge's conclusion that the Planning Board lacked the power to exact payment for off-site improvements under the proper enabling legislation was based on the Supreme Court's holding in Divan Builders, Inc. v. Planning Bd. of Wayne Tp., 66 N.J. 582, 334 A.2d 30 (1975). There, a municipality required a developer to pay for part of a drainage project necessitated by the planned development. Id. at 588, 334 A.2d 30. The Supreme Court held that although the enabling legislation made no specific reference to off-site improvements, the purpose of the legislation indicated that such a requirement was allowed. Id. at 595-97, 334 A.2d 30. The Court there stated that questions of municipal authority must be resolved broadly in favor of the planning agency. Id. at 596, 334 A.2d 30. The Court also set forth that it is more fair for the developer to bear the expense of an improvement which benefits it directly rather than placing the burden on the community at large. Id. at 596-97, 334 A.2d 30. Moreover, the Court indicated it was permissible for municipalities to require developers to finance off-site improvements so long as costs were allocated proportionally among those benefiting from them. Id. at 598, 334 A.2d 30.
*8 Here, as in Divan, the enabling legislation does not specifically allow the Planning Board to condition approval on a developer's contribution to necessary off-site improvements. See N.J.S.A. 40:27-6.2, -6.6; see also Monmouth County Subdivision Site Plan Resolution § 12.01. As in Divan, they do allow the Planning Board to require on-site improvements. The policy considerations for allowing municipalities to condition subdivision approval on contribution for off-site improvements necessitated by developments apply equally to county planning boards. The only argument Squires Gate makes for reaching a conclusion contrary to that in Divan is that the Legislature did not choose to amend the County Planning Act to incorporate the holding in that case. However, as Divan held that the right to require off-site improvements would be implied by the courts in the absence of a specific provision, it was not necessary for the Legislature to enact such a provision even though it chose to do so with respect to municipalities. See N.J.S.A. 40:55D-42. Thus, although no specific enabling legislation allowed the Planning Board to require Squires Gate to contribute to the off-site improvement necessitated by its development, the Supreme Court's holding in Divan indicates that the Planning Board should be allowed to require such a contribution.
The motion judge also held the Planning Board's action ultra vires on his determination that it obtained jurisdiction solely based on the fact that the development would affect the County's drainage facilities. Under N.J.S.A. 40:27-6.2, a county planning board may review a subdivision affecting a county road or drainage facility where the proposed subdivision will cause storm water to drain into a county culvert, N.J.S.A. 40:27-6.2(a), or the proposed subdivision "abuts a county road." N.J.S.A. 40:27-6.2(c). Similarly, under N.J.S.A. 40:27-6.6, a county planning board may review site plans for proposed developments where the development will cause storm waters to "drain either directly or indirectly to a county road" or through a county culvert. N.J.S.A. 40:27-6.6(e). The motion judge, reading our holding in Kode Harbor Dev. Assocs. v. *9 Atlantic Cty., 230 N.J. Super. 430, 553 A.2d 858 (App.Div. 1989), interpreted these provisions to deny the Planning Board jurisdiction to require contributions for the widening of the bridges on Three Brooks Road.
In Kode Harbor, a county planning board required a developer to contribute to the improvement of a nearby county road. Id. at 434, 553 A.2d 858. The proposed development did not abut or run along the County road. Id. at 433-34, 553 A.2d 858. Rather, the county board obtained jurisdiction based solely on the fact that the proposed development would cause storm waters to run into the county drainage system. Id. at 434, 553 A.2d 858. We held that a county planning board whose jurisdiction is based solely upon the impact a proposed development may have on county drainage facilities could not impose conditions and require contributions for off-site county road improvements which pertain to wholly unrelated problems. Id. at 443-44, 553 A.2d 858. Under those circumstances, we found that the board could not require contributions for off-site road improvements unrelated to the county's drainage facilities. Id.
Plaintiff, however, reads Kode Harbor too broadly. In this case, we find a rational nexus between the expansion of the bridges, which abut Squires Gate's proposed subdivision, and storm waters, which drain into County culverts. The fact is that the County bridge is an integral part of the drainage system without which neither the road nor drainage could exist. Thus, we hold Kode Harbor should not be applied so broadly as to preclude a county planning board jurisdiction to require any developer contribution for off-site road improvements or drainage facilities where such rational nexus is established. Cf. Holmdel Builders Ass'n v. Township of Holmdel, 121 N.J. 550, 570-71, 583 A.2d 277 (1990) (affirming the power of municipalities to require developers to supply or finance off-site public facilities or amenities which have a strong nexus with the *10 development). It is inconsequential whether the surfaces of the bridges are Freehold roads or County roads.
Squires Gate also contends that the motion judge erroneously applied the volunteer rule to this case and held that it was not entitled to the return of its contribution for bridge widening. The volunteer rule has been a part of our jurisprudence for almost 100 years and may be stated thusly: "[W]here a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible [sic] against him, he cannot recover it back." City of Camden v. Green, 54 N.J.L. 591, 593, 25 A. 357 (E. & A. 1892). Our Supreme Court has reaffirmed and applied this principle. See, e.g., Continental Trailways v. Director, Div. of Motor Vehicles, 102 N.J. 526, 548, 509 A.2d 769 (1986), cert. dism., 481 U.S. 1001, 107 S.Ct. 1636, 95 L.Ed.2d 195 (1987); In re Fees of State Bd. of Dentistry, 84 N.J. 582, 588, 423 A.2d 640 (1980).
Squires Gate contends that the rule does not apply where the money was illegally demanded. The law, however, is to the contrary. If the demand for the money was legal, as we find it was here, there is no need to determine whether the money should be returned. In all of the cases holding that the payee need not refund the monies, it was not collected pursuant to a valid legal obligation. See Continental Trailways, supra, 102 N.J. at 547, 509 A.2d 769; City of Camden, supra, 54 N.J.L. at 593, 25 A. 357. Rather, refund of monies improperly collected turned entirely on the fact that the payor submitted the funds under duress. In re Fees of State Bd. of Dentistry, supra, 84 N.J. at 588, 423 A.2d 640; West Park Ave., Inc. v. Ocean Tp., 48 N.J. 122, 130-31, 224 A.2d 1 (1966). Squires Gate misreads the holding in Mill Race, Ltd. v. Mayor of Bernards Tp., 230 N.J. Super. 160, 168-69, 553 A.2d 44 (App.Div.), certif. den., 117 N.J. 154, 564 A.2d 874 (1989). That case dealt solely with a developer's statutory right to claim a refund under N.J.S.A. 40:55D-42 of off-site improvement fees paid under an ordinance later declared ultra vires. Id. Thus, it is inapposite to this *11 case, where subdivision approvals, rather than local ordinances, are at issue.
Squires Gate also contends that it did not voluntarily pay the sums demanded by the County and that the presence or absence of duress is a factual issue not to be determined on summary procedure. Squires Gate ignores the fact that the record here clearly demonstrates that Bradgate, in whose shoes Squires Gate stands, volunteered the payment of the sums as its alternative to move the project forward rapidly. We read the record as the Planning Board seeking alternatives and Bradgate offering payment for the bridge widening.
Squires Gate's contention that the presence or absence of duress is a factual issue precluding summary judgment is without merit. The record here demonstrates no issue of fact as to Squires Gate's duress, as Bradgate had freely and voluntarily offered to pay for a portion of the bridge widening. Thus, the allegations of duress are no more than bare conclusions. Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75, 110 A.2d 24 (1954).
We bottom our decision on our finding that the Planning Board was legally entitled to collect the developer's contribution to the widening of the bridge, and thus, the monies were collected pursuant to a valid legal obligation. Consequently, under this analysis, the volunteer rule is inapplicable, as it only applies to demands for payments which are not legally enforceable. Nevertheless, we note that even if we were to find that the Planning Board had no legal right to demand contributions from the developer for bridge improvements, the record contains ample support for the trial judge's finding that Squires Gate is not entitled to a refund because its predecessor-in-interest voluntarily paid the sums involved.
While we have some reservation concerning the motion judge's determination with regard to the expanding of the 45-day rule in light of the intentional delay of nine months in challenging the Planning Board's action, we do not deem it *12 necessary to decide that issue in light of what we have said heretofore. The same is true of his decision with regard to the interpretation given to N.J.S.A. 40:27-6.9 regarding the exhaustion of administrative remedies.
Affirmed.
D'ANNUNZIO, J.A.D. (concurring).
In light of the Legislature's grant of limited authority to county planning boards, I have strong reservations regarding applicability to the present case of the rationale of Divan Builders, Inc. v. Planning Bd. of Wayne Tp., 66 N.J. 582, 334 A.2d 30 (1975). Moreover, in this case, it is unnecessary to address the full range of county planning board power or Divan's applicability. The county planning board's power in the present case to require the widening of the pavement over Monmouth County's bridges is established by N.J.S.A. 40:27-6.2 (§ 6.2), without reliance upon Divan's legal theories of implied authority to require rationally related off-site improvements.[1]
Section 6.2 requires county planning board approval of "those subdivisions affecting county ... drainage facilities...." Plaintiff concedes that its subdivision, among others, will drain through the county water courses at issue in this case. Consequently, the county planning board has the power, under § 6.2a, to require "adequate drainage facilities and easements when... the proposed subdivision will cause storm water to drain either directly or indirectly ... through any drainage way, structure, pipe, culvert, or facility for which the county is responsible for the construction, maintenance or proper functioning." Plaintiff also concedes that if the capacity of the drainage facilities at issue was inadequate to carry plaintiff's *13 stormwater, then the planning board had the power to require plaintiff to underwrite the cost of increasing the facilities' capacity. Plaintiff contends, however, that the planning board lacks the power to require it to contribute to the widening of the drainage facilities' surface so as to render the bridge safe for the traveling public.
I agree with the majority's rejection of plaintiff's contention. The bridges in question are part of the county's drainage facilities. A drainage facility is not adequate if its surface, utilized by the traveling public, is narrower than the road it carries over the water. Thus, in this case, the county planning board's power comes directly from § 6.2, which applies to all drainage facilities, whether on or off the development site, through which a development's water flows.
NOTES
[1] The moving papers for both motions are apparently not included in the record.
[1] N.J.S.A. 40:55D-42 now governs municipal authority to require off-site improvements. See New Jersey Builders Ass'n. v. Mayor and Tp. Comm. of Bernards Tp., 108 N.J. 223, 528 A.2d 555 (1987).