621 A.2d 985

NEW JERSEY BUILDERS ASSOCIATION, A NOT–FOR–PROFIT CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. BOROUGH OF MENDHAM, A MUNICIPAL CORPORATION IN THE COUNTY OF MORRIS, DEFENDANT–APPELLANT.

DAVE JACKSON HOMES, INC., ET AL., PLAINTIFF–RESPONDENT, CROSS–APPELLANT, v. BOROUGH OF MENDHAM, A MUNICIPAL CORPORATION IN THE COUNTY OF MORRIS, DEFENDANT–APPELLANT, CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 16, 1993—Decided March 19, 1993.

Before Judges J.H. COLEMAN, STEIN and CONLEY.

Henry N. Luther, III, argued the cause for appellant; (Dillon, Bitar & Luther, attorneys; Mr. Luther of counsel; Virginia M. Hourigan on the brief).

Harold Goldman argued the cause for respondent Rural Comforts, L.P.

Ben D. Shiriak argued the cause for respondents New Jersey Builders Association and Pitney Farms Associates (Hutt & Berkow, attorneys; Mr. Shiriak of counsel and on the brief).

Juan J. Ryan argued the cause for respondent Dave Jackson Homes, Inc.

The opinion of the court was delivered by

COLEMAN, J.H., P.J.A.D.

This case involves an appeal by the Borough of Mendham (Mendham) from a summary judgment requiring it to reimburse five developers $213,000 found to be excessive water connection fees. There is also a cross-appeal. We now reverse the judgment requiring the refunds and remand for further proceedings. We affirm on the cross-appeal.

I

Mendham has its own water supply system, which it built about seventy-five years ago and has maintained since. Sometime shortly after January 1984, Mendham's engineer decided that the water supply system needed certain improvements to service expected increases in demand. He estimated the cost of the improvements at $750,000. At that time Mendham charged new users only a tapping fee, which essentially covered the actual cost of connecting the user to the system.

In late 1985, Pitney Farms Associates (Pitney Farms) and other residential developers in neighboring Mendham Township asked Mendham for permission to connect to its water supply. The developers did not want to pay for improvements in the system, so Mendham declined their request on the basis that the system lacked the capacity to serve them.

In March 1986, Pitney Farms wrote to Mendham that "to the extent legally possible, the applicant will assist the Borough with its needs for capital improvement." In early 1987, Pitney Farms, Dave Jackson Homes, Inc. (Dave Jackson) and Rural Comforts asked Mendham to reconsider its policy of denying connections to outside developments. They agreed to contribute towards the upgrading of the system in part because that would cost them less than the estimated $6,000 to $7,000 per unit that they otherwise would have had to spend to provide alternative water to the sites.

Those requests prompted Mendham to consider funding the improvements by reversing its long-standing policy of not supplying water outside its borders except for a limited number of customers. Mendham first considered having the developers actually make the improvements, but then it decided to fund them through a "high" connection fee, set "relatively high" so that the estimated 400 new connections which it anticipated would generate enough in connection fees to pay for the improvements and necessary bonding. Mendham set the fee at $3,000, and thought it was reasonable because it was less than

what developers would have spent on the individual wells or alternative water supply that Mendham Township would otherwise have required of them. Accordingly, on March 3, 1987, Mendham adopted Ordinance 6–87 which amended Section 100–3 of its code to impose a uniform connection fee of $3,000 on residents and nonresidents alike.

On November 2, 1987, Mendham entered into separate water supply contracts with Pitney Farms' predecessor M.G.S. Associates and with Dave Jackson. A similar contract was made with Commander Development Corp., predecessor to Rural Comforts. Mendham considered the $3,000 figure in Ordinance 6–87 when it set the connection fee for Pitney Farms and Dave Jackson. The contracts set the connection fee as "the same as those charged for connections in the Borough as provided by Section 100–3 of the Borough code." For each unit, Pitney Farms and Dave Jackson had to pay the connection fee before getting a building permit. In addition, Pitney Farms and Dave Jackson agreed to install water supply and distribution lines at their expense, and to convey the installations and related easements to Mendham for free. On July 26, 1988, Mendham entered into a water supply contract with Rural Comforts under those same terms. Neither Pitney Farms, Dave Jackson nor Rural Comforts ever protested the amount of the fee or indicated an intent to challenge it.

On July 12, 1989, Mendham wrote to Dave Jackson and Rural Comforts. It informed them that an unnamed developer's delay in satisfying Mendham Township's requirements for allowing construction of a water storage tank, and the threat to Mendham's timely collection of connection fees that was posed by a lawsuit filed by New Jersey Builders Association two weeks earlier seeking invalidation of the ordinance, could delay construction of the water-supply system improvements. Mendham declared that it could not expand water service without those improvements, and as a result would not allow new connections until these difficulties were resolved.

Mendham apparently informed Pitney Farms of its concerns as well because on July 27, 1989, Mendham and Pitney Farms supplemented their water supply contract. The addendum added a commitment by Pitney Farms not to challenge the connection fee it had already paid or was about to pay for its first ten connections.

The County and Municipal Water Supply Act (*N.J.S.A.* 40A:31-1 *et seq.*) was enacted by *L.*1989, *c.* 109, § 1, effective June 29, 1989. *N.J.S.A.* 40A:31-10 established the requirement that water connection fees payable to a nonutility authority must be uniform and equitable for the same type and class of use or service. On or about October 25, 1989, Mendham retained the services of accountants to study its connection fee policies in light of *N.J.S.A.* 40A:31-1 *et seq.* In April 1990, Mendham revised its ordinance by reducing the connection fee from $3,000 to $700.

The New Jersey Builders Association in its amended complaint, the four developers as intervenors and Dave Jackson in its complaint sought to have (1) the $3,000 connection fee contained in the March 3, 1987 Ordinance 6–87, retroactively invalidated, and (2) refunded to them the connection fees and expenses which they paid. A bench trial was conducted on April 11, 1991 to determine whether the method used by Mendham to arrive at the $3,000 connection fee was improper under decisional law predating the enactment of *N.J.S.A.* 40A:31-1 *et seq.*

On May 1, 1991, the trial judge issued an order declaring Ordinance 6–87 invalid. At the encouragement of the trial judge, the developers filed motions for summary judgment for a refund of connection fees paid by them. The judge granted summary judgment requiring the refunds apparently because he felt that Mendham's defenses (that the ordinance was valid and there were voluntary payments without protest) were moot in light of his invalidation of Ordinance 6–87, which he thought,

left the water supply contracts without a price term. This appeal followed.

## II

In this appeal Mendham makes three interrelated contentions that (1) its contracts with the five developers were legally binding and enforceable because the reference to Ordinance 6–87 was simply incidental, (2) the developers failed to demonstrate that even if the $3,000 fee was not calculated in accordance with acceptable standards, it was reasonable since it was arrived at through collective negotiations, and (3) the developers would be unjustly enriched by any refunds because they have already passed the costs of the connection fees through to the customers who purchased the homes. Mendham also argues the "volunteer rule" and the basic unfairness of allowing the developers to receive the benefit of their contracts without requiring them to pay in accordance with the contract.

In *Meglino v. Township Comm. of Eagleswood*, 103 *N.J.* 144, 152, 510 *A.*2d 1134 (1986), it was observed that a municipality or a municipal utility may impose a connection fee as long as it is not "patently unreasonable." This principle applies to funding of a new water system and the financing of improvements to an existing system. The connection fee may include a capital recovery component. *Id.* at 156, 510 *A.*2d 1134. The Supreme Court referred to *N.J.S.A.* 40:14B–21 and –22 and stated that the fee or rate must represent the actual cost of connection plus an amount to represent a fair payment toward cost of the system. *Id.* at 161–167, 510 *A.*2d 1134.

[1] The Court did not decide whether the use of an improper method to fix the connection fee makes the fee *per se* unreasonable. But *White Birch Realty Corp. v. Gloucester Tp. Mun. Utils. Auth.*, 80 *N.J.* 165, 176–177, 402 *A.*2d 927 (1979), held that a trial judge after hearing the evidence may well conclude that use of an improper method makes the fee unreasonable. Here, Mendham set the $3,000 fee based on the need for

improvements without any consideration of the capital costs for the existing system and the payment toward capital costs by the current users. Instead, Mendham determined the fee based upon the cost to developers to obtain alternative sources of water for the developments. We agree with the trial judge, that based upon *Meglino,* Mendham used an improper method to calculate the fee of $3,000.

We disagree, however, with the trial judge's determination that enforceability of the water connection contracts depended upon the validity of Ordinance 6–87. He assumed that the invalidity of the ordinance left the contracts without an enforceable connection fee and that unenforceability made Mendham's "volunteer rule" defense moot.

The "volunteer rule" has been recognized in this State for at least a century. *See City of Camden v. Green,* 54 *N.J.L.* 591, 593, 25 *A.* 357 (E. & A. 1892). It holds that, in the absence of fraud, duress, extortion or mistake of fact, a voluntary overpayment to a government unit or agency need not be refunded. *Ibid.; Squires Gate, Inc. v. County of Monmouth,* 247 *N.J.Super.* 1, 10, 588 *A.*2d 824 (App.Div.1991); *Yardville Estates v. Trenton,* 66 *N.J.Super.* 51, 62, 168 *A.*2d 429 (App. Div.1961). If a payor, such as either of the developers, fails to protest because of economic constraints which exist due to market conditions rather than any actions of the governmental agency, the payor may not successfully claim duress as the reason it failed to protest. *Squires Gate, supra,* 247 *N.J.Super.* at 10–12, 588 *A.*2d 824. Here, there has been no finding of duress and the letter from Mendham dated July 12, 1989 is susceptible to a reasonable interpretation inconsistent with duress.

Nor did the trial judge dispose of Pitney Farms' argument that its commitment not to challenge the connection fee, which it made after Mendham voiced its apprehensions following the institution of litigation by New Jersey Builders Association, constituted duress by eliminating its right to protest. One

could reasonably conclude that Pitney Farms' assent was proof to the contrary that it could not afford to abandon the contract, and that Mendham did not place Pitney Farms under duress because it would not have abandoned the contract even if Mendham had never asked for such a provision. Those findings cannot be made on a summary judgment motion.

█ New Jersey Builders Association and the developers reliance upon *In re Increase in Fees by N.J. Bd. of Dentistry,* 84 *N.J.* 582, 588–589, 423 *A.*2d 640 (1980) is misplaced. There, more than economic constraints were involved because a dentist who did not pay the fee would be barred by law from practicing in the profession. *See also Hirsch v. State Bd. of Med. Exam.,* 252 *N.J.Super.* 596, 600 *A.*2d 493 (App.Div.1991), *aff'd,* 128 *N.J.* 160, 607 *A.*2d 986 (1992). The dentist's option was to pay the fee or not practice dentistry. *See N.J.S.A.* 45:6–10 and 6–12. In contrast, plaintiffs' option was to pay the fee or obtain water through some other source. We hold that Mendham should have been allowed to present evidence supportive of its volunteer rule defense. Also, Mendham must be permitted to present evidence in a trial seeking to establish its assertion that the $3,000 fee is reasonable because it was arrived at through negotiations before Ordinance 6–87 was enacted.

█ We are also persuaded that the trial judge erred in requiring Mendham to refund the full $3,000 connection fee. The failure of the municipality to use a proper method in calculating the fee is neither a waiver nor a forfeiture of its right to collect a reasonable connection fee. *Meglino, supra,* 103 *N.J.* at 167–169, 510 *A.*2d 1134; *White Birch, supra,* 80 *N.J.* at 176–177, 402 *A.*2d 927; *Airwick Industries, Inc. v. Carlstadt Sewerage Auth.,* 57 *N.J.* 107, 122, 270 *A.*2d 18 (1970). *See also In re Fees of N.J. Bd. of Dentistry, supra,* 84 *N.J.* at 588–589, 423 *A.*2d 640.

### III

We hold that the method used to determine the fee was improper and we affirm the order dated May 1, 1991 declaring

Ordinance 6–87 invalid. We reverse the determination that the $3,000 fee is unreasonable and the summary judgment requiring full refunds. We remand the matter to the Law Division to conduct a trial on whether the $3,000 fee was agreed upon voluntarily after negotiations. Mendham shall be permitted to raise its defense of the volunteer rule. In the event there is a determination that a portion of the refund is required, the judge must decide whether the developers or the home buyers are entitled to receive any such refunds.

We find the issue raised by Dave Jackson in its cross-appeal respecting prejudgment interest to be moot since we have reversed that judgment. The second issue raised by Dave Jackson is without merit because even if the $18,000 it seeks to recover had been awarded, we would reverse that award.

Affirmed in part, reversed in part and remanded.