NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

-------------------------------------------------------x

THE ARC/MERCER, INC.,      :

     :     TAX COURT OF NEW JERSEY

     Plaintiff,      :     DOCKET NO:    007970-2024

     :

     v.      :

     :

DIRECTOR, DIVISION OF TAXATION,    :

     :

     Defendant.      :

     :

-------------------------------------------------------x

Decided May 8, 2025

Robert S. Britschge, attorney for plaintiff.

Matthew J. Platkin, Attorney General, attorney for defendant (Michelline Capistrano Foster, Deputy Attorney General, on the brief).

CIMINO, J.T.C.

The Legislature exempted I.R.C. § 501(c)(3) entities from the mansion tax. The ARC/Mercer, an I.R.C. § 501(c)(3) entity, purchased a commercial property and mistakenly paid the tax. Nine months later, ARC/Mercer sought return of the erroneous payment. Citing a ninety-day limitation on contested mansion tax refund claims, the Director refused to return the payment. Despite ARC/Mercer lacking a valid refund claim, the erroneous payment provision of the State Uniform Tax Procedure Law requires the Director to return the payment.

Both parties moved for summary judgment. On summary judgment, the court assesses "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Since there is not any serious dispute of fact, this matter is ripe for summary judgment.

The material facts of this case are simple and undisputed. ARC/Mercer is an I.R.C. § 501(c)(3) entity. ARC/Mercer purchased a commercial building and mistakenly paid the mansion tax in the amount of $11,500 on June 15, 2023. Nine months later, on March 19, 2024, ARC/Mercer asked the Director to return the tax payment. Citing the ninety-day limitation on refund claims, the Director refused to return the overpayment. This action ensued.

The mansion tax is one percent of the sales price of certain types of properties. N.J.S.A. 46:15-7.2(a). Initially, the tax only targeted residential property sales of more than one-million dollars. L. 2004, c. 66, § 8. See generally, Matrix Bordentown, Lot 2, LLC v. Dir., Div. of Tax'n, _____ N.J. Tax _____ (Tax 2025). By amendment, the Legislature expanded the tax to include certain commercial properties. L. 2006, c. 33, § 1 (codified as N.J.S.A. 46:15-7.2(a)(4)). Tax-exempt I.R.C. § 501(c)(3) entities are exempt from the mansion tax. N.J.S.A. 46:15-7.2(b)(1).

2

The disputed provision of the mansion tax provides:

> The fee imposed . . . shall be subject to the provisions of the State Uniform Tax Procedure Law, [N.J.S.A.] 54:48-1 et seq.; provided however, that notwithstanding the provisions of subsection a. of [N.J.S.A.] 54:49-14, a taxpayer may file a claim under oath for refund at any time within 90 days after the payment of any original fee . . . .

[N.J.S.A. 46:15-7.2(c).]

Generally speaking, the mansion tax is subject to the provisions of the State Uniform Tax Procedure Law. N.J.S.A. 46:15-7.2(c). N.J.S.A. 54:49-14(a) (subsection 14(a)) is the refund claim provision of the State Uniform Tax Procedure Law. A taxpayer can file a refund claim within four years of a tax payment "unless a shorter limit is fixed by the law imposing the tax." N.J.S.A. 54:49-14(a). Here, the mansion tax fixes a shorter time of ninety days for subsection 14(a) refund claims. N.J.S.A. 46:15-7.2(c). Nine months after payment, ARC/Mercer asked the Director to refund the mansion tax payment. ARC/Mercer argues the court should equitably extend the refund claim period. However, the court is not going to ignore the plain words of the statute. Fuster v. Township of Chatham, 259 N.J. 533, 547 (2025). Due to an untimely filing, ARC/Mercer does not have a refund claim.

However, the case is not over. The Director's regulations make this clear. The regulations provide that "[r]efunds or credits of erroneous or illegal tax payments for which no refund claims have been filed will be made strictly according to the provisions of N.J.S.A. 54:49-16." N.J.A.C. 18:2-5.4(b). N.J.S.A. 54:49-16(a)

3

(subsection 16(a)) requires the return of erroneously paid monies which the Director has no entitlement.

The Director asserts there is not a valid refund claim without a timely filing. The court agrees. However, ARC/Mercer's failed attempt at filing a valid refund claim does not thwart this court's review of whether the Director is properly refusing the return of an erroneous payment per subsection 16(a).

Subsection 16(a) is a statutory manifestation of the Director's obligation to turn square corners. F.M.C. Stores Co. v. Borough of Morris Plains., 100 N.J. 418, 426 (1985). The Director must act with compunction and integrity in dealing with the taxpaying public. Id. at 427. The Director cannot knowingly keep a payment which is indisputably erroneous. Subsection 16(a) provides a legislatively mandated safety valve that bolsters the public confidence in our taxing system. Nevertheless, despite being on notice that ARC/Mercer is an I.R.S. § 501(c)(3) entity, the Director has failed to return the erroneous payment.

The court agrees with the Director's regulation requiring strict adherence to the provisions of subsection 16(a). See N.J.A.C. 18:2-5.4(b). The Legislature limited subsection 16(a) to a narrow set of circumstances without any questions of law or fact. Contested refund claims fall outside the ambit of subsection 16(a). The Legislature further narrowed the scope of subsection 16(a) with the requirement of either erroneous or illegal collection, or payment under a mistake of law or fact.

4

The time limit under subsection 16(a) is two years "unless a shorter limit is fixed by the law imposing the tax." N.J.S.A. 54:49-16(a).

The requirement of no disputes of fact or law are satisfied. The fact is ARC/Mercer is an I.R.C. § 501(c)(3) entity. The law is I.R.C. § 501(c)(3) entities are exempt from the tax. See N.J.S.A. 46:15-7.2(b)(1).

ARC/Mercer satisfies the additional subsection 16(a) requirement of a payment made under a mistake of law. Despite being an I.R.C. § 501(c)(3) entity exempt from the tax, ARC/Mercer paid the tax. ARC/Mercer is within the two-year limit.

Even though ARC/Mercer fits through section 16(a)'s narrow corridor for relief, the Director refuses to return the erroneous payment. The Director argues the ninety-day limit on a "subsection a. of [N.J.S.A.] 54:49-14 . . . claim . . . for refund" prescribed by the mansion tax applies regardless of whether ARC/Mercer seeks relief under subsection 14(a) or subsection 16(a). See N.J.S.A. 46:15-7.2(c). In setting forth their respective limitation periods, both subsection 14(a) and subsection 16(a) separately provide "unless a shorter limit is fixed by the law imposing the tax." Subsection 14(a)'s allowance of a shorter limit only applies to subsection 14(a) refund claims. Subsection 16(a)'s allowance of a shorter limit only applies to subsection 16(a) erroneous payment determinations. Despite the separate "shorter

5

limit" language in each subsection, the Director wants the court to conflate the "shorter limit" language of the two subsections.

There are three reasons why the Director's reading of the mansion tax and the State Uniform Tax Procedure Law are incorrect. First, the Director's interpretation renders portions of the mansion tax surplusage. Second, the legislative history of the State Uniform Tax Procedure Law reveals that subsection 14(a) refund claims and subsection 16(a) erroneous payment determinations are separate and distinct forms of relief with differing statutory procedures and limitations. Third, the Director's current regulations reveal that the Director actually treats subsection 14(a) refund claims and subsection 16(a) erroneous payment determinations as separate and distinct remedies for return of tax overpayments.

First, applying the ninety-day limit to subsection 16(a) would render the Legislature's specific mention of subsection 14(a) surplusage. The Director wants the court to ignore the specific language of the mansion tax that only narrows subsection 14(a) refund claims to ninety days.

An "important guidepost is the bedrock assumption that the Legislature did not use any unnecessary or meaningless language . . . ." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013). A court "strive[s] to avoid an interpretation that renders words in a statute surplusage because courts must assume that the Legislature purposely included every word." In re Proposed Constr. of

Compressor Station (CS327), 258 N.J. 312, 325 (2024). A court further "strive[s] for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void or insignificant." Fuster, 259 N.J. at 547. The Legislature put the specific reference to subsection 14(a) in the mansion tax for a purpose, and that purpose was not to limit subsection 16(a). Any other reading would ignore the plain will of the Legislature to have the ninety-day limitation only apply to subsection 14(a) refund claims.

Second, the legislative history reveals two separate and distinct provisions of the State Uniform Tax Procedure Law providing overpayment relief to taxpayers. Each provision has separate requirements and separately stated time limitations. The genesis for the State Uniform Tax Procedure Law was the alcohol tax enacted in 1933. The alcohol tax had two provisions which subsection 14(a) and subsection 16(a) closely follow. As enacted, the alcohol tax read as follows:

> 506. Refunds and credits.
>
> (a) The taxpayer at any time within one (1) year after the payment of any original or additional tax assessed against him may file with the commissioner a claim under oath for refund in such form as the commissioner may prescribe, stating the grounds therefor; provided, however, that no claim for refund shall be required or permitted to be filed with respect to a tax paid after protest has been filed with the commissioner or after proceedings on appeal have been commenced as provided herein below.
>
> . . . .

7

(c) Where no questions of fact or law are involved and it appears from the records of the commissioner that any monies have been erroneously or illegally collected from any taxpayer or other person or have been paid by any taxpayer or other person under a mistake of fact or law, the commissioner shall have the power at any time, upon making a record in writing of his reasons therefor, to issue his certificate to the treasurer authorizing him to refund to such taxpayer or person such monies so determined to have been erroneously or illegally paid.

[L. 1933, c. 434, § 506.]

Alcohol tax refund claims had a one-year limitation, whereas the return of an erroneous payment was allowed at any time.

The Legislature adopted a sales tax in June 1935 which was repealed shortly thereafter in October 1935. That tax also had provisions which subsection 14(a) and subsection 16(a) closely follow. The sales tax read as follows:

508. Refunds and credits.

a. Any retailer, at any time within two years after the payment of any original or additional tax assessed against him, may file with the commissioner a claim under oath for refund, in such form as the commissioner may prescribe, stating the grounds therefor; provided, however, that no claim for refund shall be required or permitted to be filed with respect to a tax paid, after protest has been filed with the commissioner or after proceedings on appeal have been commenced as provided in this act.

. . . .

c. Where no questions of fact or law are involved and it appears from the records of the commissioner that any moneys have been erroneously or illegally collected from

8

any retailer or other person or have been paid by any retailer or other person under a mistake of fact or law, the commissioner may at any time, upon making a record in writing of his reasons therefor, certify to the comptroller that the retailer is entitled to such refund and thereupon the comptroller shall authorize the payment thereof from the appropriation for this purpose.

[L. 1935, c. 268, § 508 (repealed by L. 1935, c. 329, § 1).]

Sales tax refund claims had a two-year limitation, and an erroneous payment could be returned at any time.

Also in 1935, the Legislature revamped the motor fuels tax. The language used by the Legislature was slightly different than the alcohol tax or sales tax. However, the motor fuels tax allowed the return of an erroneous payment within one year and a refund claim within sixty-days. L. 1935, c. 319, §§ 313, 1203.

In 1936, the Legislature enacted the State Tax Uniform Procedure Act, now known as the State Uniform Tax Procedure Law. Compare L. 1936, c. 263, § 101 with N.J.S.A. 54:48-1. The tax overpayment provisions closely tracked the alcohol tax and sales tax. As to refund claims and erroneous payment determinations, the Act provided:

315. Refund claim.

Any taxpayer, at any time within two years after the payment of any original or additional tax assessed against him, unless a shorter limit is fixed by the act imposing the tax, may file with the commissioner a claim under oath for refund, in such form as the commissioner may prescribe, stating the grounds therefor; provided, however, that no

9

claim for refund shall be required or permitted to be filed with respect to a tax paid, after protest has been filed with the commissioner or after proceedings on appeal have been commenced as provided in this act, until such protest or appeal has been finally determined.

[L. 1936, c. 263, § 315.]

317. Erroneous payments.

Where no questions of fact or law are involved and it appears from the records of the commissioner that any moneys have been erroneously or illegally collected from any taxpayer or other person or have been paid by any taxpayer or other person under a mistake of fact or law, the commissioner may at any time, within two years of payment, unless, a shorter limit is fixed by the act imposing the tax, upon making a record in writing of his reasons therefor, certify to the Comptroller that the taxpayer is entitled to such refund and thereupon the Comptroller shall authorize the payment thereof from the appropriation for such purpose.

[L. 1936, c. 263, § 317.]

The refund claims provision sets the period of limitations at two years "unless a shorter limit is fixed by the act imposing the tax." Id. at § 315. The erroneous payment provision also sets the period of limitations at two years "unless a shorter limit is fixed by the act imposing the tax." Id. at § 317.

The current version of subsection 14(a) and subsection 16(a) have not changed much since 1936 except for the extension of subsection 14(a)'s two-year limitation to four years. L. 1992, c. 175, § 5. The sections now read:

10

Any taxpayer, at any time within four years after the payment of any original or additional tax assessed against him, unless a shorter limit is fixed by the law imposing the tax, may file with the director a claim under oath for refund, in such form as the director may prescribe, stating the grounds therefor, but no claim for refund shall be required or permitted to be filed with respect to a tax paid, after protest has been filed with the director or after proceedings on appeal have been commenced as provided in this subtitle, until such protest or appeal has been finally determined. The signing of an agreement by the taxpayer and the director extending the period for assessment shall likewise extend the period for filing a claim for refund.

[N.J.S.A. 54:49-14(a).]

Where no questions of fact or law are involved and it appears from the records of the director that any moneys have been erroneously or illegally collected from any taxpayer or other person or have been paid by any taxpayer or other person under a mistake of fact or law, the director may at any time, within two years of payment, unless a shorter limit is fixed by the law imposing the tax, upon making a record in writing of his reasons therefor, certify to the comptroller that the taxpayer is entitled to such refund and thereupon the comptroller shall authorize the payment thereof from the appropriation for such purpose.

[N.J.S.A. 54:49-16(a).]

As demonstrated in detail above, subsection 14(a) and subsection 16(a) provide separate and distinct remedies for tax overpayments. Subsection 14(a) permits contested refund claims. However, in certain narrow and limited circumstances, subsection 16(a) facilitates the return of undisputed erroneous

11

payments despite the lack of a valid subsection 14(a) refund claim. See N.J.A.C. 18:2-5.4(b).

Upon enactment of the mansion tax, both subsection 14(a) and subsection 16(a) were already on the books. Compare L. 1936, c. 263, §§ 315(a), 317(a), R.S. 54:49-14(a), -16 (a) (1937) (uniform tax procedure law) with L. 2005, c. 19, § 1 (mansion tax amendment). There is a presumption that the Legislature is aware of its prior enactments. Township of Mahwah v. Bergen Cnty. Bd. of Tax'n, 98 N.J. 268, 279 (1985), Jacobs v. N.J. State Highway Auth., 54 N.J. 393, 401 (1969). The Legislature significantly curtailed the time period for a taxpayer to assert a contested mansion tax refund claim under subsection 14(a).[1] However, the Legislature left the door open for a longer period of relief from an erroneous payment of the mansion tax. Just as it did with subsection 14(a), the Legislature could have shortened the time period for relief under subsection 16(a). It did not. Despite the Director's urging, the legislative history reveals there is not any reason to conflate the limitation provisions of these two distinct provisions. Rather, the legislative history reveals the limitation provisions are separate and distinct.

Third, the Director's own regulations confirm that subsection 14(a) and subsection 16(a) are separate and distinct. "Refunds or credits of erroneous or illegal

---

[1] Parenthetically, the Legislature also specifically eliminated the applicability of N.J.S.A. 54:49-14(b) to the mansion tax. N.J.S.A. 46:15-7.2(c).

12

tax payments for which no refund claims have been filed will be made strictly according to the provisions of N.J.S.A. 54:49-16." N.J.A.C. 18:2-5.4(b). The plain language of the this regulatory provision explains that without a valid refund claim, the Director must proceed according to subsection 16(a)'s erroneous payment provision.

The Director's treatment of interest on overpayments further confirms the separate treatment of subsection 14(a) and subsection 16(a). The Legislature explicitly allowed interest on refund claims. N.J.S.A. 54:49-15.1. The Director confirms this legislative mandate. N.J.A.C. 18:2-5.9(a). The Legislature was silent as to interest on return of erroneous payments per subsection 16(a). See, e.g. N.J.S.A 54:49-15.1. However, the Director has made clear that no interest is due on erroneous payments.[2] N.J.A.C. 18:2-5.9(b). Finally, an example provided by the Director's regulations makes clear that returned erroneous payments under subsection 16(a) are not refund claims and not subject to interest. N.J.A.C. 18:2-5.9(b), Example 3.

The Director also refuses to return the erroneous payment because ARC/Mercer voluntarily paid the mansion tax. The volunteer rule "provides that where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible against him, he cannot recover it back."

---

[2] No interest is paid unless and until a refund claim is filed. Ibid.

13

In re N.J. State Bd. of Dentistry, 84 N.J. 582, 588 (1980). Part of the common-law, the volunteer rule in this state dates back to 1876. Jersey City v. Riker, 38 N.J.L. 225 (Sup. Ct. 1876).

In enacting the State Uniform Tax Procedure Law, the Legislature curbed the volunteer rule. Subsection 14(a) allows refund claims and subsection 16(a) allows the return of erroneous payments regardless of a voluntary payment. If the Director's argument that the volunteer rule precludes a return of monies, the Director would never have to pay refund claims or return an erroneous payment on a variety of voluntary self-assessed taxes.

The Director's reliance upon Continental Trailways, Inc. v. Director, Division of Motor Vehicles, 102 N.J. 526 (1986), In re New Jersey State Board of Dentistry, and New Jersey Hospital Association v. Fishman, 283 N.J. Super. 253 (App. Div. 1995) is misplaced. The State Uniform Tax Procedure Law provides that it applies to any tax which is payable to or collectible by the Director of the Division of Taxation. N.J.S.A. 54:48-2 (definition of "state tax"). Since the Continental Trailways taxpayers paid the tax to the Director of the Division of Motor Vehicles, and not the Director of the Division of Taxation, the State Uniform Tax Procedure Law did not apply. 102 N.J. at 547-48. Instead, the court applied the common law volunteer rule. Id. at 548. The same held true in In re New Jersey State Board of Dentistry and New Jersey Hospital Association. 84 N.J. at 584 (fees paid to Board

14

of Dentistry), 283 N.J. Super. at 259 (fees paid to the Commissioner of the New Jersey Department of Health). In this case, the mansion tax itself makes clear that the State Uniform Tax Procedure Law is applicable. N.J.S.A. 46:15-7.2(c).

The actions of the Director are not beyond the review of this court. Subsection 16(a) indicates the Director "may" allow the return of an erroneous payment. This is not the only provision in our tax statutes couched in such terms. Subsection 8 of the Corporation Business Tax provides "[i]f it shall appear to the [director] that an allocation factor determined pursuant to [statute] does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, he may adjust it . . . ." N.J.S.A. 54:10A-8. "[T]he Director not only has the authority but also the obligation to consider requests for adjustment [per subsection 8] on claims of unfairness . . . ." F. W. Woolworth Co. v. Dir., Div. of Tax'n, 45 N.J. 466, 497 (1965). Such a consideration is subject to review by the courts. Silent Hoist & Crane Co. v. Dir., Div. of Tax'n, 100 N.J. 1, 26-27 (1985).

Likewise, this court can review the Director's refusal to grant a determination of erroneous payment per subsection 16(a). Namely, this court reviews whether there is a dispute of law or fact, and whether there is a mistake of law. This court has the duty and the obligation to review and ensure that the Director turns square corners when dealing with the taxpaying public. See F.M.C. Stores, 100 N.J. at 426.

15

Ensuring square corners is part of the check-and-balance function of the Judiciary in our multi-branch form of government.

Finally, the Director mounts a collateral attack that assumes the applicability of subsection 16(a). Subsection 16(a) is only applicable if there are no facts in dispute. The Director tries to derail the section 16(a) determination by baldly alleging the I.R.C. § 501(c)(3) exempt status of ARC/Mercer is in dispute. While the Director complains about how ARC/Mercer set forth the material facts of this case, the various material facts in the record are undisputed. See Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 362 (App. Div. 2002) (placing substance over form in summary judgment matters). First, an amended affidavit of consideration for use by buyer recorded in the county land records clearly affirms that ARC/Mercer is an I.R.C. § 501(c)(3) tax-exempt organization. Second, a certification submitted by Steven Cook, the executive director of ARC/Mercer, certifies that ARC/Mercer is an I.R.C. § 501(c)(3) tax-exempt organization. Finally, attached to Mr. Cook's certification is a letter from the Internal Revenue Service (IRS) confirming ARC/Mercer is an I.R.C. § 501(c)(3) tax-exempt organization.

The status of a I.R.C. § 501(c)(3) organization is a matter of public record readily available from the IRS's internet site. Rev. Proc. 2018-32, 2018-23 I.R.B. 739. Prior to the internet, the IRS published Publication 78 listing tax-exempt organizations. Id. at § 3.01. Since 2011, the IRS placed Publication 78 online. Id.

at §§ 3.01, 3.02. The IRS also has an online listing of organizations automatically revoked for failing to file returns for three years. Id. at §§ 3.01, 3.06. Even upon restoration from an automatic revocation, a record of the automatic revocation remains on the auto-revocation list. Id. at § 3.06. Publication 78 derives from the exempt organization Business Master File. Id. at § 3.02. Since 2018, the IRS has also made available an online extract of the Business Master File which includes the date of the exemption ruling. Id. at § 3.04. Also, since 2018, the yearly tax returns of tax-exempt organizations, which are a matter of public record, are available on the IRS's website. Id. at § 3.01.

The Director cannot claim ignorance of the status of ARC/Mercer when a verification of the status is literally right at her fingertips. "Competent opposition requires competent evidential material beyond mere speculation and fanciful arguments." Palisades Ins. Co. v. Horizon Blue Cross Blue Shield of N.J., 469 N.J. Super. 30, 37 (App. Div. 2021); Bove v. AkPharma, Inc., 460 N.J. Super. 123, 138 (App. Div. 2019). Self-serving assertions are not enough. Ibid. Needless to say, the Director has not set forth any evidence that ARC/Mercer is not an exempt organization.

Overall, the Director, without entitlement, is keeping the monies of a tax-exempt I.R.C. § 501(c)(3) organization. The unmistakable policy of the Legislature expressed in the mansion tax is that I.R.C. 501(c)(3) organizations are not subject to

the mansion tax. The unmistakable policy of the Legislature expressed in the State Uniform Tax Procedure Law is that the Director cannot keep erroneous payments. Returning the monies which rightfully belong to ARC/Mercer not only properly interprets the law but fulfills the legislative policy of both statutory provisions.

For the foregoing reasons, the court grants ARC/Mercer's motion to return the mansion tax and denies the Director's cross motion.